U.S. Court of Appeals No. 23-55739
(U.S.D.C. No. 5:20-cv-01866-FLA-SHK)

### IN THE

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

_____

JOHN BRANDSTETTER, an individual,

Plaintiff and Appellant,

vs.

CITY OF RIVERSIDE, et al.,

Defendants-Appellees.

_____

On Appeal from the District Court for the
Central District of California,
Honorable Fernando L. Aenelle-Rocha, presiding

_____

### APPELLANT'S OPENING BRIEF

_____

**DONALD W. COOK** CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(213) 252-9444 (Phone); (213) 252-0091 (Fax)
Email: manncook@earthlink.net
Attorney for Appellant

00158486.WPD

TABLE OF CONTENTS

Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

OVERVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A. Procedural History. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        *The Complaint.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        *The Motion For Preliminary Injunction.* . . . . . . . . . . . . . 13
        *The Cross-Motions for Summary Judgment / Adjudication.* 14
        *The Requests for Rule 11 Sanctions.* . . . . . . . . . . . . . . . . 14

    B. The Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        *1. The Search Warrant, Turner's Affidavit, Including*
        *Its Omissions And Misstatements.* . . . . . . . . . . . . . . . . . . 19
        *2. The Seizures of Plaintiff's Firearms, and the Non-Seizures*
        *of Plaintiff's Computers and related Electronic Devices.* . 24
        *3. RPD's Subsequent Refusal To Return To Plaintiff His*
        *Firearms.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
        *4. RPD's Refusal To Give Plaintiff Notice And Opportunity To*
        *Be Heard On RPD's Ongoing Refusal To*
        *Return His Firearms.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

I.    The Warrant Was Overbroad In Violation Of
    The Fourth Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

        A.    The Test For Overbreadth. . . . . . . . . . . . . . . . . . 28
        B.    The Warrant Was Overbroad. . . . . . . . . . . . . . . . 30
        *All Firearms and Firearms-Related Items (3-ER-414).* . . . 33
        *All Electronic Devices (3-ER-414).* . . . . . . . . . . . . . . . . . 34
        *"Dominion and Control" Items (3-ER-415).* . . . . . . . . . . . 34
        *Vehicles (3-ER-413).* . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

00158486.WPD

        C.      The Fallacies In The District Court's Ruling. . . . . . 36

II.     The Seizure Of Plaintiff's Lawfully Acquired And Owned Firearms
        And Defendants' Subsequent Refusal To Return The Firearms,
        Violated Plaintiff's Second, Fourth And Fourteenth Amendment
        Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

        A.      The Firearms' Initial Seizures Were Unlawful. . . . . . . . . 44
        B.      Refusing    To    Return    Plaintiff's    Firearms'    Was
                Unconstitutional. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

III.    The District Court Erred In Not Issuing An Injunction Commanding
        The Return Of Plaintiff's Firearms. . . . . . . . . . . . . . . . . . . . . . 51

IV.     The District Court Abused Its Discretion In Refusing To Consider If
        Defense Counsel Should Be Sanctioned Under Rule 11. . . . . . . 52

V.  Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

STATEMENT OF RELATED CASE(S) . . . . . . . . . . . . . . . . . . . . . . . . 57

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . 58

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

00158486.WPD

Table of Authorities

Pages

*Cases*

*Baird v. Bonta*,
81 F.4th 1036 (9th Cir. 2023) . . . . . . . . . . . . 12, 27, 46, 47, 49, 51

*Bravo v. City of Santa Maria*,
665 F.3d 1076 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Brewster v. Beck*,
859 F.3d 1194 (9th Cir. 2017) . . . . . . . . . . . . . . . 11, 12, 48, 50, 51

*Caniglia v. Strom*,
141 S.Ct. 1596 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 48, 51

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Devenpeck v. Alford*,
543 U.S. 146 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*District of Columbia v. Heller*,
554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Durham v. United States*,
403 F.2d 190 (9th Cir.1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Estate of Millender v. County of Los Angeles*,
2012 WL 3655515 (C.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 30

*Frein v. Pennsylvania State Police*,
47 F.4th 247 (3rd Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*In re Grand Jury Supoenas Dated Dec. 10, 1987*,
926 F.2d 847 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Liston v. County of Riverside*,
120 F.3d 965 (9th Cir. 1997) . . . . . . . . . . . . . . . . . 8, 31, 32, 38-41

*Lombardi v. City of El Cajon*,
117 F.3d 1117 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*MacDonald v. City of Chicago*,
561 U.S. 742 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Maryland v. Pringle*,
   540 U.S. 366 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Messerschmidt v. Millender*,
   565 U.S. 535 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 29

*Millender v. County of Los Angeles*,
   620 F.3d 1016 (9th Cir. 2010) (*en banc*) . . . . 11, 29, 30, 33, 37, 45

*Miranda v. City of Cornelius*,
   429 F.3d 858 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 12, 50, 51

*Monell v. New York City Dept. Of Soc. Servs.*,
   436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
   142 S.Ct. 2133 (2022) . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 47, 49, 51

*Payton v. New York*,
   445 U.S. 573 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Sandoval v. County of Sonoma*,
   912 F.3d 509 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . 50, 51

*Sgro v. United States*,
   287 U.S. 206 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Steagald v. United States*,
   451 U.S. 204 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 40

*United States v. Alaniz*,
   69 F.4th 1124 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*United States v. Lacy*,
   119 F.3d 742 (9th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States v. Rowold*,
   429 F.Supp.3d 469 (N.D. Ohio 2019) . . . . . . . . . . . . . . . . . . . . 25

*United States v. Spilotro*,
   800 F.2d 959 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . 8, 29, 37

00158486.WPD

*Constitution/Statutes/Rules of Court*

Cal. Civ. Code § 52.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Cal. Pen. Code § 513 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Veh. Code § 14602.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Federal Rules of Appellate Procedure 4 . . . . . . . . . . . . . . . . . . . . . . . . 9

Federal Rules of Civil Procedure 11 . . . . . . . . . . . . . . . . . . 12, 14, 15, 52

Federal Rules of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . 14

Title 28, United States Code § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Title 42, United States Code § 1983 . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

U.S. Const., Amend. II . . . . . . . . . . . . . . . . . . . . . 8, 11, 38, 44, 48, 49, 51

U.S. Const., Amend. IV . . . . 11, 27, 28, 30, 32, 33, 38, 40, 44, 48, 50, 51

U.S. Const., Amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

## OVERVIEW

This lawsuit under 42 U.S.C. § 1983 arises from the procurement and execution of an overbroad search warrant at Plaintiff John Brandstetter's home. Mr. Brandstetter was not involved in any criminal activity of any type – a fact defendants knew *before* they procured the search warrant but which defendants did not disclose to the issuing magistrate. While defendants strongly implied to the issuing magistrate that the warrant's target (one Kevin Gleason) was the sole resident whether as the homeowner or renter, defendants did not tell the magistrate what defendants knew about Mr. Brandstetter – that he was the homeowner, that he and his family had no involvement in or knowledge of any criminal activity, and furthermore that the police believed Plaintiff resided at his home with his wife and disabled child.

These omissions enabled defendants to obtain a warrant authorizing searching *anywhere* in Plaintiff's home, and for seizing practically anything defendants found, as if Gleason was the sole resident and sole owner of *all* property, including firearms, vehicles, and electronic devices of any type, found at Plaintiff's home.

In granting summary judgment for defendants, the district court concluded there were no constitutional violations in obtaining and executing the warrant. The court also concluded it was and is lawful for

defendants to refuse to return to Plaintiff his firearms which defendants admit they knew from the moment they seized the firearms, were lawfully possessed by Plaintiff and were not contraband or evidence of crime. Hence, core issues on this appeal include:

● For a warrant claimed to be overbroad, must a court apply the test for overbreadth as stated in *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986) (and subsequently re-affirmed)?

● For a warrant for searching one's home for evidence of crime, may the police withhold from the magistrate that the police know that persons innocent of crime and with no connection to any criminal activity, reside at the home and, in fact, the police know are the actual homeowners whereas the police know their target suspect is but a mere guest or tenant of the innocent homeowners? *Liston v. County of Riverside*, 120 F.3d 965 (9th Cir. 1997).

● For firearms the police seized for "safekeeping" and for which the police admit the firearms were neither contraband nor evidence of crime, was the district court obligated to apply the standard announced in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2133 (2022) in assessing if the firearms' seizures, both initial and ongoing, violated the Second Amendment?

## JURISDICTION

The district court's Judgment was entered August 21, 2023. 1-ER[1]-2. Plaintiff filed his Notice of Appeal August 23, 2023. 3-ER-572, 586 (ECF 93). The appeal is timely and this Court has jurisdiction. 28 U.S.C. § 1291; Fed.R.App.Proc. 4(a)(1)(A).

## ISSUES

1. Was a search warrant of a residence owned and occupied by Plaintiff Brandstetter, an innocent homeowner not suspected of any criminal activity, overbroad because:

    A. The warrant's affiant knew that the Plaintiff-homeowner had no involvement in any criminal activity;

    B. The affiant correctly believed that the warrant's target, suspect Gleason, was a mere guest or tenant of the Plaintiff-homeowner whom the affiant also knew was the homeowner, none of which the affiant disclosed to the issuing magistrate;

    C. Suspect Gleason's underlying crimes all involved extortion threats he made against his estranged wife in which Gleason threaten to distribute unlawfully acquired sexually-explicit photographs and videos of his wife and/or her mother, with all communications being made electronically via Gleason's computer;

---

[1] "ER" refers to Appellant's Excerpts of Record.

D. The warrant authorized the search of *all* areas of Plaintiff's home, the seizure of all electronic devices of any type, along with evidence, paper or otherwise, indicating ownership of the residence and vehicles, even though (1) the warrant's affiant knew that only Plaintiff and *not* suspect Gleason was the homeowner; (2) ownership of the home and vehicles had no connection of any type to any of Gleason's crimes; (3) the affiant believed that Plaintiff, his wife and disabled child resided at Plaintiff's home and were not suspected of any criminal activities; and (4) the warrant's affiant intentionally withheld from the issuing magistrate the affiant's knowledge that *innocent* non-suspects resided at Plaintiff's home, instead making it appear that the suspect Gleason was the sole resident.

E. The warrant's affiant knew that Plaintiff Brandstetter was the owner of lawfully-acquired and possessed firearms, *none* of which the affiant believed was contraband or evidence of crime; and

F. The warrant authorized the seizure of *all* firearms and related items regardless of ownership, even though the warrant's affiant knew that *none* of Plaintiff's lawfully-possessed firearms was evidence of crime or contraband.

2. In obtaining authorization to seize *all* firearms and related items even though the affidavit showed that the only possible firearm-related

00158486.WPD

threat concerned a shotgun, was the warrant overbroad, *see Millender v. County of Los Angeles*, 620 F.3d 1016, 1024 (9th Cir. 2010) (*en banc*) *overruled on oth. grds. sub. nom.*, *Messerschmidt v. Millender*, 565 U.S. 535 (2012)?

3. Should an injunction issue commanding defendants to return to Plaintiff his lawfully acquired and lawfully possessed firearms because the continuing seizure violates Plaintiff's Second and Fourth Amendment rights:

A. Defendants admit they seized Plaintiff's firearms for "safekeeping" and *not* because firearms were evidence of crime or contraband. *Caniglia v. Strom*, 141 S.Ct. 1596, 1599-00 (2021) (Fourth Amendment does not authorize police to seize legal firearms that are not evidence of crime under a "community caretaking" exception to the warrant requirement);

B. Refusing to return property – here firearms ·· for which there is no constitutional justification for the ongoing seizure, violates the Fourth Amendment. *Brewster v. Beck*, 859 F.3d 1194, 1196-97 (9th Cir. 2017); and

C. Neither defendants nor the district court applied the standard mandated by *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2133 (2022) to justify defendants' ongoing refusal to return to

-11-

Plaintiff his firearms. *Baird v. Bonta*, 81 F.4th 1036, 1043-44 (9th Cir. 2023).

4. Can defendants justify withholding from Plaintiff his lawfully acquired firearms because he did not ***again*** submit to a ***another*** background investigation for the same firearms Plaintiff had lawfully acquired but which defendants had unlawfully seized? *Miranda v. City of Cornelius*, 429 F.3d 858, 864-65 (9th Cir. 2005) (That state law authorizes a property seizure does not in and of itself establish constitutional justification); *Brewster v. Beck*, 859 F.3d 1194, 1196-97 (9th Cir. 2017) (same).

5. Did the district court abuse its discretion in refusing to even consider if defense counsel should be sanctioned under F.R.Cv.P. 11(b) by filing a patently frivolous motion seeking Rule 11 sanctions against Plaintiff's counsel?

## STATEMENT OF THE CASE

### A. Procedural History.

*The Complaint.*

Under 42 U.S.C. § 1983, Plaintiff John Brandstetter sued the City of Riverside ("City"), the Riverside Police Department ("RPD"), its then police chief Larry V. Gonzalez ("Gonzalez"), and RPD Detective Jolynn Turner ("Turner"). Mr. Brandstetter alleged that pursuant to her agency's

-12-

custom, police and/or practice, in June 2020 Turner procured an overbroad search warrant for Plaintiff's home; was responsible for the warrant's June 19, 2020 execution in an unreasonable manner; and later refused to return to Plaintiff his lawfully acquired firearms. In addition to monetary damages, Plaintiff sought injunctive relief commanding defendants to return his firearms. 3-ER-548-561 (Complaint).

*The Motion For Preliminary Injunction.*

Plaintiff moved for a preliminary injunction commanding defendants to return to Plaintiff his lawfully acquired and possessed firearms defendants seized during the course of the June 19, 2020 search. ECF 24 filed 6/28/21 (3-ER-535-36). The trial court denied the motion. The court ruled Plaintiff had not shown that the ongoing seizures were " '<u>otherwise irremediable</u>' " (emphasis in original). California law barred the return of firearms the police seize unless Mr. Brandstetter re-establishes his eligibility to possess the firearms in accordance with various provisions of state law. Since Plaintiff had not sought to "follow[] the statutory procedure" for the return of his firearms, state law barred defendants from releasing the firearms. 8/5/21 Order @ 4:19-5:21 (ECF 27) (1-ER-17-18).

*The Cross-Motions for Summary Judgment / Adjudication.*

Under F.R.Cv.P. 56, both sides moved for summary judgment or adjudication. 3-ER-437-38 (ECF 51); 3-ER-580 [ECF 47 - defendants' motion]; 3-ER-581 [ECF 51 - Plaintiff's motion]. The district court denied Plaintiff's motion but granted defendants' in its entirety, thereby rendering judgment in defendants' favor. The court concluded there were no constitutional violations in the procurement and execution of the search warrant, or in the failure to return to Plaintiff his firearms. Upon these findings the court found it unnecessary to decide if the individual defendants were entitled to qualified immunity, or if the two entity defendants (the City and RPD) were liable under *Monell v. New York City Dept. Of Soc. Servs.*, 436 U.S. 658 (1978). 8/21/23 Order @ 8:2-10:21 (1-ER-9-11).

*The Requests for Rule 11 Sanctions.*

Concurrent with the filing of their Rule 56 motion, defendants sought monetary sanctions against Plaintiff's counsel for purported violations of F.R.Cv.P. 11 in the filing and prosecution of Plaintiff's complaint. 2-ER-256-73 (motion). In opposing the motion, Plaintiff requested that the district court award Rule 11 sanctions against defense counsel for filing a frivolous Rule 11 motion. ECF 63 filed 11/19/21 @ 23:11-16 (2-ER-190). In one short cryptic sentence the district court denied

-14-

defendants' Rule 11 motion. 8/21/23 Order @ 11:18-19 (1-ER-12) ("Defendants do not meet their burden to demonstrate that sanctions are warranted under Fed. R. Civ. P. 11(b)."). As to Plaintiff's request for Rule 11 sanctions, the court said nothing.

### B. The Facts.

In the spring of 2020, DG, the estranged wife of Kevin Gleason, began accusing Gleason of threatening to distribute sexually explicit materials regarding DG and her mother, demanding she give Gleason money and sexually oriented videos.[2] DG's complaints made their way to defendant Jolynn Turner, an RPD detective. (DG resided in Riverside.) Summed up, per email and social media posts, Gleason was "attempting to extort [DG] for money, sexual videos, photographs, and to terrorize her." Turner concluded (correctly) that Gleason was likely sending his threatening messages from Plaintiff's home, where DG had told Turner Gleason was now residing. 3-ER-376 @ ls. 10-22; 3-ER-378 @ ls. 9-20; 3-ER-287 @ ls. 5-14; 3-ER-359 @ line 24 to 3-ER-360 @ line 1.

In the course of her investigation, Turner learned the following:

● DG and Gleason were estranged and had been living apart for

---

[2] Two points: First, Plaintiff prefers *not* to use DG's full name even though defendants made her identity a matter of public record in the district court record. Second, Plaintiff refers to DG by either those initials or "victim" (which she indisputably was), while referring to her estranged husband as either suspect Gleason or just Gleason.

years (since at least 2014). Since the separation, Gleason, desperate for money and essentially homeless, was living out of his van or with family members or friends. 3-ER-286 @ line 21 to 287 @ line 4; 3-ER-378 @ ls. 9-20.

● With an exception (addressed below) virtually all of Gleason's hundreds of harassing messages (all sent electronically via email and social media posts) were aimed at coercing or extorting DG to give Gleason money and sexually oriented materials or else Gleason would publicly post embarrassing and highly invasive of DG and her mother's privacy, sexually related videos and photographs. 3-ER-418-21 (pp. 6-10 of Turner's affidavit in support of the search warrant).

● About a month after DG first reported Gleason's conduct to the RPD, on May 20, 2020, DG received two emails she believed Gleason sent in which he threatened her with something he called "dragons breadth" if she did not submit to his demands. "Dragons breadth," per DG's research, referred to shotgun ammunition. Upon receiving these emails and learning what "dragons breath" meant, DG informed Turner that "Gleason has a shot gun his dad left him," that she didn't "know what to do" and that she was "really scared now." 3-ER-420; 3-ER-434.

● Although Turner knew DG was "really scared now" because of the "dragons breadth" emails, Turner did *not* seek an warrant for Gleason's

arrest even though Turner knew (a) there was an outstanding 2016 felony arrest warrant for Gleason at his former Riverside address, and (b) Turner knew that Gleason was now residing at Plaintiff's Rosemead residence in Los Angeles County. 3-ER-331 @ ls. 17-19; 3-ER-332 @ line 20 to 3-ER-333 @ line 11; 3-ER-376 @ ls. 10-16. Turner did not seek Gleason's arrest because, per Turner, she "had a whole new case," "a completely different case," "[i]t was during COVID" and [courts] were letting everybody out." 3-ER-337 @ ls. 23-25.

It may be that unlike DG, Turner did not take seriously the threat posed by Gleason's "dragons breadth" May 20 emails. Until the May 20 emails, Gleason had not made any threats of violence, whether with or without a firearm. Furthermore, other than his two May 20 "dragons breadth" emails, Gleason made no threats of violence. 3-ER-305 @ ls. 7-19. And though DG told Turner Gleason had inherited a shotgun from his father and also that DG knew, from years earlier, Gleason had a handgun of unknown type, Turner may have believed it unlikely that Gleason *currently* possessed any firearms – Turner knew Gleason was homeless and at times living out of his van, while California's *A*utomated *F*irearms *S*ystem had no record of Gleason owning a firearm. 3-ER-304 @ 2-8; 3-ER-306 @ ls. 10-20; 3-ER-307 @ line 20 to 3-ER-308 @ line 11; 3-ER-307 @ line 20 to 3-ER-308 @ line 4 (Turner admits receiving fellow Ofc. Levitt's

4/20/20 report); 2-ER-253 (bottom) (Ofc. Levitt's 4/20/20 report); 3-ER-360 @ line 24 to 3-ER-361 @ line 1.

About four weeks after the May 20 "dragons breadth" emails, on June 17, 2020, Turner submitted her affidavit to the Riverside Superior Court, seeking a warrant to search Plaintiff's Rosemead home. 3-ER-412. Interestingly, although she could have Turner did *not* seek authorization to arrest Gleason.[3,4] When she submitted her search warrant application, Turner believed or knew the following:

● Gleason was a guest or tenant at the Rosemead residence; Gleason was *not* the homeowner;

● Residing at Rosemead residence was Plaintiff, his wife and their disabled child, and that Plaintiff was the likely homeowner. 3-ER-376 @

---

[3] Turner could have arrested Gleason based on the 2016 felony warrant (once it was updated with Gleason's current address, see *Payton v. New York*, 445 U.S. 573 (1980)). Additionally, there was probable cause for a arrest warrant based on Gleason's attempts at extortion, see Cal. Pen. Code § 513.

[4] In its 8/21/23 Order the district court states that Turner "sought and obtained an *arrest* warrant for Gleason and a search warrant for Plaintiff's home." 2-ER-3 @ ls. 15-16. The district court's statement is incorrect. Turner only sought an *search* warrant; she did *not* seek an arrest warrant. *See* 3-ER-412-13 (Turner's warrant application sought authorization for a search of Plaintiff's home, items within and about the home, along with permission to just search Gleason with no mentioning of an intent to arrest him.); *see also* 3-ER-477 @ ¶5 (Turner states she only obtained search warrants).

ls. 10-22, 3-ER-377 @ ls. 10-17; 3-ER-287 @ ls. 5-7; 3-ER-293 @ ls. 6-11; 3-ER-301 @ ls. 10-17.

● Neither Plaintiff nor his wife were suspected of being an accomplice or co-conspirator of any type with Gleason; both had no criminal record and neither were suspected of any crime. 3-ER-293 @ ls. 6-11; 3-ER-294 @ ls. 3-8; 3-ER-296 @ ls. 1-17; 3-ER-300 @ ls. 2-13; 3-ER-330 @ ls. 6-10; 3-ER-336 @ ls. 5-9.

● As confirmed by California's *A*utomated *F*irearms *S*ystem ("AFS"), Plaintiff was the lawful owner of several handguns. 3-ER-309 @ line 10 to 3-ER-310 @ line 3; 3-ER-352 @ ls. 6-18.

● AFS did not have a record of Gleason owning any firearms. 3-ER-307 @ line 20 to 3-ER-308 @ line 11.

● None of the vehicles at the Rosemead residence were registered to Gleason; all were registered to Plaintiff (except for a Buick registered in Plaintiff's father's name). 2-ER-277 @ ¶3; 3-ER-312 @ ls. 6-11; 3-ER-314 @ 15-19; 3-ER-318 @ ls. 4-9.

### 1. The Search Warrant, Turner's Affidavit, Including Its Omissions And Misstatements.

Relying on Turner's affidavit, the warrant authorized officers to search:

● *Anywhere* and *everywhere* in Plaintiff's home and its curtilage for

*any* document or writing of any type, that may pertain to or reflect "dominion and control of the location," such as utility billing statements, personal or business mail, bank statements, financial records of any and all type, etc.; and

● *Every* vehicle on the premises regardless of ownership.

In further reliance on Turner's affidavit, the warrant authorized the officers to seize:

● *All* items concerning or reflecting ownership and/or control of the premises and automobiles located, including mail, utility and phone bills, tax statements, check stubs, keys, letters, address books, business records, canceled checks, notes, lists and so on;

● *All* electronic devices of *any* type, *i.e., all* computers, *all* monitors, *all* computer programs, cell phones, electronic storage devices, cabling, printers, connecting switches, hubs and interface devices, all records, paper or electronic related to computer devices or equipment, including ownership, etc. computers, laptops, cell phones, and their component and/or peripheral parts; and

● *All* firearms of any type and caliber, i.e., handguns, rifles and shotguns, including ammunition of any type, expended casings, gun-cleaning items or kits, firearms-related packaging materials, paperwork regarding purchases of any firearms or related items,

-20-

even though the only firearm-related crime Gleason had threaten, involved a *shotgun*.

3-ER-412-13.

Turner's affidavit included numerous material omissions:

*First*: Turner's affidavit does not even acknowledge that Turner's investigation had ascertained if persons other than Gleason resided at the Rosemead residence. Indeed, upon reading Turner's affidavit the conclusion one draws is that Gleason and only Gleason resided at the Rosemead residence, and may even be its homeowner.

*Second*: Turner's affidavit did not disclose that Turner believed Plaintiff along with his wife and disabled child, were living at the Rosemead residence, and that Plaintiff was probably the homeowner.

*Third*: Turner's affidavit did not disclose that Plaintiff and his spouse – both of whom resided at the location – had no involvement in Gleason's criminal activities, were not suspected of any crime, and had no criminal record.

*Fourth*: Turner's affidavit did not disclose that Gleason was *not* the registered owner of any vehicle at the Rosemead residence, that the vehicles all appeared to belong to Plaintiff.

*Fifth*: Turner's affidavit did not disclose that pursuant to California AFS records, Plaintiff was the lawful owner of numerous handguns, none

of which were thought to be contraband or evidence of crime.

*Sixth*: Turner's affidavit did not disclose that the *only* firearm-related threat of which Gleason was suspected, involved a shotgun *and no other firearm*.

3-ER-417-21 (Turner's affidavit in support of warrant application.).

Turner's affidavit also made material misstatements. Turner swore that DG "said her estranged husband *has* several guns; .38 cal., .22 cal., 9mm handgun, 12-gauge shotgun, and a 20-gauge shotgun." 3-ER-421. Thus, Turner's affidavit stated that DG had personal knowledge Gleason currently possessed three firearms of specific caliber, and two shotguns of particular caliber. In fact, DG only knew and told Turner that Gleason had inherited a "shotgun," gauge unknown, and at one time *years* earlier, had a handgun of unknown type and caliber. Furthermore, the information about firearms of particular caliber and the two shotguns, did not originate with DG; that was what DG's brother Patrick had told DG. The brother told DG that when he and Gleason had gone shooting *years* earlier (2014 or before), these are the firearms the brother could recall. DG passed on that information to Turner, including that her information came from her brother concerning a years earlier event. 3-ER-371 @ line 25 to 3-ER-373 @ line 4 (Victim's testimony); *see also* 3-ER-346 @ line 9 to 3-ER-347 @ line 1, and 3-ER-348 @ line 22 to 3-ER-349 @ line 25 (Turner's

testimony). Yet Turner's affidavit falsely averred that DG had *personal knowledge* that Gleason *currently* possessed ".38 cal., .22 cal., 9mm handgun, 12-gauge shotgun, and a 20-gauge shotgun." 3-ER-421. In fact, Turner knew DG had no such knowledge, that instead DG's information was both second hand and stale.

Because it was Turner's burden to show that the information relied on to establish probable cause that Gleason's current possession of ".38 cal., .22 cal., 9mm handgun, 12-gauge shotgun, and a 20-gauge shotgun" was not stale, *Sgro v. United States*, 287 U.S. 206, 210 (1932), and because the information about Gleason's current possession of firearms was in fact stale, Turner materially misrepresented the facts.

In addition, Turner's affidavit claimed that *all* firearms, *all* vehicles, and *all* electronic devices at the Rosemead residence were "used as the means of committing a felony," were "possessed [by Gleason] with the intent to use it as means of committing a public offense," and "tends to show that a felony has been committed or that a particular person has committed a felony," 3-ER-412-14 These statements were largely false because Turner knew that Gleason was not suspected of having committing any crime involving a firearm other than a shotgun; was not suspected of committing any crime involving a vehicle; Plaintiff lawfully owned firearms, resided at the Rosemead residence and owned the

vehicles located there, and was not suspected of any criminal activities.

### 2. The Seizures of Plaintiff's Firearms, and the Non-Seizures of Plaintiff's Computers and related Electronic Devices.

Electronic devices – computers, laptops, cell phones, smart phones – were essential to Gleason's efforts to extort and terrorize DG. He communicated his threats via email and other electronic means. Gleason used the internet to post and threatening to post sexually-oriented and probably illegally-obtained videos and photographs. 3-ER-417-21. Daresay then that *any* electronic device capable of transmitting Gleason's threats, and/or keeping a record of the videos and photographs he claimed to have (e.g., a hard drive, memory card or other storage device) was fair game for seizure, assuming probable cause to believe that Gleason had access to or used the devices.

Here, when the RPD executed the warrant they found in the Rosemead residence's common areas (living room, hallway etc.) numerous computers and related peripherals. 3-ER-327 @ 10-17. Despite this plethora of electronic devices all easily accessible to Gleason, and even though the warrant authorized the seizures of all these devices, the RPD did not seize them. Instead, the RPD seized only (a) the smartphone found on Gleason, (b) the laptop found in a storage area that Gleason said belonged to him. 3-ER-327 @ line 24 to 3-ER-328 @ line 24. RPD did not

seize the other electronic devices easily accessible to Gleason and which could have been used to communicate his threats and/or document those threats (via storage of emails, text messages, internet postings, video and photograph files) because Plaintiff told Turner the numerous computers etc., belonged to him and not Gleason. 3-ER-327 @ ls. 10-20; 3-ER-329 @ line 16 to 3-ER-330 @ line 10; 3-ER-345 @ ls. 8-15.

But when it came to Plaintiff's ten firearms, the RPD seized them all.[5] The RPD seized them even though (a) only two of the ten were shotguns; (b) the firearms were kept in the attic in a non-accessible location; (c) the firearms were *not* seized as evidence of crime or contraband but were seized for "safekeeping"; (d) Plaintiff told Turner the firearms belonged to him and not Gleason; and (e) Turner seized the

---

[5] Seized from Plaintiff's attic were one Heckler & Koch semi-automatic pistol (serial #22-1455), one Spesco revolver (serial #119847), one Buffalo Arms Co. revolver (serial #411174), one Sturm Ruger .44 caliber revolver, one JD AR-15 (lower only) serial #15486, one Marlin lever action 30-30 caliber rifle, one Winchester .22 caliber rifle (serial #505945), one Winchester .22 caliber model 90 rifle (serial #B1872481), one Marlin .22 caliber rifle (serial #71402668), and a J.C. Higgins pump action 12 gauge shotgun. 3-ER-412-13; 3-ER-351 @ ls. 1-3.

As defendant Turner admitted (3-ER-354 @ line 23 to 3-ER-355 @ line 5) and as defined by law, Plaintiff's AR-15 lower receiver is not a "firearm"; it is the lower portion of an AR-15, either stripped or complete, and which has a serial number. *United States v. Rowold*, 429 F.Supp.3d 469, 471, 475-76 (N.D. Ohio 2019). But for reasons of simplicity, when Plaintiff uses the term "firearms" herein it includes the AR-15 lower defendants seized.

firearms even though she believed Plaintiff was credible! 3-ER-425 @ ls. 18-21; 3-ER-331 @ ls. 7-13.

### 3. RPD's Subsequent Refusal To Return To Plaintiff His Firearms.

Defendants admit they have and are refusing to return to Plaintiff his firearms. Defendants demand that Plaintiff first comply with state law procedures for release of firearms the police seize. 8/21/23 Order @ 9:17-24 (2-ER-10).

### 4. RPD's Refusal To Give Plaintiff Notice And Opportunity To Be Heard On RPD's Ongoing Refusal To Return His Firearms.

Since the June 19, 2020 seizure of his firearms, defendants have not provided Plaintiff with any opportunity and notice to be heard for reclaiming his firearms or contesting the firearms' ongoing seizures. 2-ER-277 @ ¶4.

00158486.WPD

## STANDARDS OF REVIEW

*Summary Judgment.* Because this appeal follows a grant of summary judgment, this Court's review is *de novo*. The Court draws all factual inferences in the light most favorable to Plaintiff/Appellant Mr. Martinez, and resolves any factual conflicts in Plaintiff's favor. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011).

*Grant / Denial of Injunctive Relief.* Abuse of discretion. The district court abuses its discretion if it bases its decision on an erroneous legal standard or on clearly erroneous factual findings. The district court applies an erroneous legal standard if it fails to employ the appropriate legal standards that govern the issuance of a preliminary injunction. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (Cleaned up).

*Rule 11 Sanctions.* Abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990).

## ARGUMENT

## I. The Warrant Was Overbroad In Violation Of The Fourth Amendment.

At the outset it must be noted that Plaintiff did *not* challenge the warrant *in toto*. Rather, it was and is Plaintiff's claim that the warrant was overbroad. Meaning the warrant authorized the search and seizure of particular areas and items for which probable cause did not exist:

Plaintiff contends that in seeking to search *everywhere*

in Plaintiff's home and its curtilage for *anything* having to do

with "dominion and control" of the premises; to search *all*

vehicles; to search for and seize *all* firearms and *all* electronic

devices regardless of ownership for either, Turner's warrant

application violated the Fourth Amendment.

Plaintiff's Notice and Motion for Partial Summary Judgment @ 15:10-15
(3-ER-439) (emphasis in original); *see also id.*, at 17:25-27 (footnote 6) (3-
ER-441) (Plaintiff acknowledged there was probable cause "to search and
seize electronic items belonging to or used by [suspect] Gleason" and
"probable cause to search for and seize a shotgun belonging to or used by
[suspect] Gleason.").

### A. The Test For Overbreadth.

Overbreadth "deals with the requirement that the scope of the
warrant be limited by the probable cause on which the warrant is based."
*In re Grand Jury Supoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856-57 (9th
Cir. 1991). To determine if a warrant was overbroad, the Court addresses
the following:

(1) whether probable cause exists to seize all items of a
particular type described in the warrant; (2) whether the
warrant sets out objective standards by which executing
officers can differentiate items subject to seizure from those

which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1991) (Opinion by then-Judge Anthony Kennedy).

Explaining the *Spilotro* test, *en banc* this Court further held:

The first consideration encapsulates the overarching Fourth Amendment principle that police must have probable cause to search for and seize "all the items of a particular type described in the warrant." *In re Grand Jury Subpoenas*, 926 F.2d at 857; *see also SDI Future Health*, 568 F.3d at 702-03; *VonderAhe v. Howland*, 508 F.2d 364, 369-70 (9th Cir.1974). The second and third factors are relevant to determining whether the warrant satisfies this general rule.

*Millender v. County of Los Angeles*, 620 F.3d 1016, 1024 (9th Cir. 2010) (*en banc*) *overruled on oth. grds. sub. nom.*, *Messerschmidt v. Millender*, 565 U.S. 535 (2012).[6]

---

[6] The Supreme Court held that the deputy who swore out the affidavit seeking seizure of all firearms, had qualified immunity on the *second* prong -- law not clearly established as of the search date (November 4, 2003).

Should defendants argue that the Supreme Court's *Messerschmidt* opinion rejected the Ninth Circuit's *en banc* holding that the warrant

Thus, though there be probable cause to search for and seize *some* items (as existed in this case) and even though a judge signed off on a warrant's application thereby issuing the warrant, those factors do not insulate the warrant from constitutional review. *Millender*, 620 F.3d at 1025-27 (Warrant authorizing seizure of *all* firearms when police knew that the only firearm involved in crime was  a " 'black sawed off shotgun with a pistol grip,' " was overbroad in violation of the Fourth Amendment).

## B. The Warrant Was Overbroad.

The overbreadth analysis begins with the following undisputed facts: Turner knew that Plaintiff was the likely homeowner and believed he resided at the Rosemead residence with his wife and disabled wheelchair-bound child; that Plaintiff was the lawful owner of various firearms, none

---

there was overbroad, the argument is meritless. As District Judge Dean Pregerson (the *Millender* trial judge) stated in a post-*Messerschmidt* ruling: "The Supreme Court did not reverse the holding by this court and the Ninth Circuit that the warrant was overbroad." *Estate of Millender v. County of Los Angeles*, 2012 WL 3655515, *2 (C.D. Cal. 2012) (filed 8/24/2012). "This distinction between the constitutional violation and qualified immunity for the officers is *critical*, because the Court's decision has already been cited incorrectly by the government in cases before this court, including this case. (See Defs.' Opp'n to MSA Mot. at 6 ('[T]he Supreme Court implicitly found there was probable cause for the issuance of the warrant....'). Again, the Supreme Court [in *Messerschmidt*] held *only* that the officers were entitled to qualified immunity. Thus, the Ninth Circuit's en banc holding that the warrant was unconstitutionally overbroad remains the law." 2012 WL 3655515 at *2 (emphasis in original).

of which was considered contraband or evidence of crime; and that the suspect Gleason, desperate for money and living at times out of his van, resided at the Rosemead residence at Plaintiff's sufferance. 3-ER-425 @ ls. 18-21. Turner thus knew that any search would be intruding into the home and privacy of Plaintiff and his family for whom there was no suspicion of wrongdoing or involvement in Gleason's crimes. Hence, Turner would reasonably expect there may be many items of personal property at the Rosemead residence, including computers and related items, belonging to Plaintiff and his family members which were not connected to Gleason's criminal wrongdoing. Furthermore, Turner would know that given the nature of Gleason's alleged crimes – criminal threats and extortion via electronic means accomplished over the internet – whether or not Gleason had actual control over Plaintiff's home and its vehicles (as highly unlikely as both were[7]) was irrelevant.

Turner's refusal to inform the issuing magistrate that Plaintiff and his family resided at the Rosemead residence, that suspect Gleason did not live there alone but likely as a guest or tenant of Plaintiff's, establishes that the warrant was overbroad. In *Liston v. County of Riverside*, 120 F.3d 965 (9th Cir. 1997), the search warrant's affidavit left out the fact that there was a "for sale" sign on the lawn of the home the

---

[7] 3-ER-378 @ ls. 9-10.

police wanted to search. As it turned out, by the time the house was searched the home had been sold and there were new homeowners not suspected of criminal activities. 120 F.3d at 969-70. Because the "for sale" sign suggested there may be new residents, the warrant omitted material facts that would have been important to the magistrate who issued the warrant: "[H]ad the additional information been contained in the affidavit the magistrate would not have issued the warrant without requiring additional information and in addition imposing specific restrictions on its execution." 120 F.3d at 974.

So too here. By "reporting less than the total story, [Turner] manipulate[d] the inferences [the] magistrate [drew]," thereby "allow[ing] [the] magistrate to be misled in such a manner [that] could denude the probable cause requirement of all real meaning." *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1123 (9th Cir. 1997). Hence, had Turner told the state court judge Plaintiff was the homeowner, he lived at the Rosemead residence with his family and none of them had any involvement in crime while suspect Gleason was only a guest or tenant, it is likely the magistrate would have recognized the warrant needed restrictions on its scope to minimize the intrusions on the Fourth Amendment interests of Plaintiff and his family.

*All Firearms and Firearms-Related Items (3-ER-414).*

Turner's affidavit sought authorization to seize every firearm and firearm-related item (e.g., ammunition) at Plaintiff's home even though it was undisputed that Gleason's only threat of physical violence against his estranged wife concerned *his* threatened use of a *shotgun*, while Turner further knew that Plaintiff lawfully owned various firearms. The case on point is *Millender*, *supra*.

As in this case, in *Millender* the warrant authorized the seizure of *all* firearms of any type and any ammunition and related items, even though the officer knew the only firearm involved in a crime was a " 'black sawed off shotgun with a pistol grip.' " *Held:* the warrant was overbroad in violation of the Fourth Amendment since it called for the seizure of "essentially any device that could fire ammunition, any ammunition, and any firearm-related materials." 620 F.3d at 1025.

At best, Turner had only probable cause to seize a shotgun belonging to or under the control of suspect Gleason. Yet Turner seized all of Plaintiff's firearms even though Turner learned that *all* of the ten firearms in Plaintiff's attic belonged to *Plaintiff*, and further knew that the firearms were inaccessible to Gleason. 3-ER-340 @ line 18 to 3-ER-341 @ line 8; 3-ER-352 @ line 6 to 3-ER-353 @ line 15; 3-ER-385 (Brandstetter depo. @ 21:20 - 22:13).

*All Electronic Devices (3-ER-414).*

The only electronic devices for which Turner had probable cause to seize, were electronic devices owned or used by suspect Gleason. Yet Turner demanded the right to seize *all* electronic devices regardless of ownership. Turner's demand was made worse by her knowledge, never disclosed to the issuing magistrate, that suspect Gleason lived at the Rosemead residence as a guest or tenant of Plaintiff who lived there with his family; that Plaintiff and his family were not suspected of any involvement in Gleason's crimes; and finally that Plaintiff and his family were likely to possess their own electronic devices none of which were germane to Gleason's crimes.

That the RPD detectives ended up seizing only (a) the smartphone found on Gleason and (b) the laptop found in a storage area that Gleason said belonged to him (3-ER-327 @ line 24 to 3-ER-328 @ line 24) was defendants' implicit admission they did not have probable cause for seeking to seek *all* electronic devices of any type as the warrant had authorized. 3-ER-327 @ ls. 10-20; 3-ER-329 @ line 16 to 3-ER-330 @ line 10; 3-ER-345 @ ls. 8-15.

*"Dominion and Control" Items (3-ER-415).*

As Turner conceded (3-ER-326 @ line 11 to 3-ER-327 @ line 8), by demanding to search for any document, paper, letter, statement or other

item that reflects ownership of the Rosemead residence, Turner was demanding the right to search *anywhere* in Plaintiff's home. But the underlying crimes at issue had nothing to do with control of the Rosemead residence. Turner, after all, was not investigating a "meth house" or other illegal drug manufacturing site where ownership and control is relevant. Suspect Gleason's threats were carried out electronically via an internet connection; none depended on Gleason's ownership or control of the Rosemead residence.

> *Vehicles (3-ER-413).*

Because she ran DMV checks, Turner knew that none of the vehicles belonged to Gleason while all were registered to Plaintiff or his deceased father. Additionally, the underlying crimes had nothing to do with the use of a vehicle. The overbreadth is thus more egregious than in *Millender*. There, both the suspect's firearm and the plaintiff's wrongfully seized firearm were shotguns. Yet the warrant was still overbroad as applied to plaintiff's shotgun (because it was a different type and model than the suspect's shotgun). 620 F.3d at 1021-23, 1026-27.

Here, there was absolutely no connection between any vehicle at Plaintiff's home and suspect's extortion threats, all of which were carried over an internet connection.

## C.    The Fallacies In The District Court's Ruling.

Beginning with an unfair and inaccurate one-sentence summary of a concession Plaintiff made, the district court concluded that the warrant was not overbroad on its face. Following that conclusion, the district court then found that Turner's failure to inform the magistrate that Plaintiff and other innocent persons resided at Plaintiff's home was immaterial since Turner had confirmed that suspect Gleason did actually reside at Plaintiff's home; Gleason had threaten his estranged wife with violence; and according to the court's order "may have had access to several firearms." 8/21/23 Order @ 7:23-8:9 (1-ER-8-9).

*First:* The district court's statement that "Plaintiff agrees there was probable cause to issue the search warrant for his home and to seize certain firearms" (8/21/23 Order @ 7:8-9 [1-ER-8]), was unfair and inaccurate. The record citation the district court gave, paragraphs 2 and 4 of ECF 64-1 aka Dkt. 64-1, was Plaintiff's responses to two factual propositions defendants had asserted. Here are Plaintiff's responses to those propositions:

2. Plaintiff agrees there was probable cause for obtaining a search warrant of *limited* scope for a search of certain areas of Plaintiff's home. Plaintiff does not and has never agreed there was probable cause for obtaining the particular warrant that

-36-

00158486.WPD

defendant Turner sought and obtained. [Citation to evidence and quotations omitted].

ECF 64-1 ¶2 (@ 3:16-24) (emphasis in original) (2-ER-175).

*   *   *   *

4. Plaintiff agrees there was probable cause to seize *certain* firearms believed to belong to Kevin Gleason.

ECF 64-1 ¶4 (@ 5:9-12) (emphasis in original) (2-ER-177).

Thus, any fair reading of Plaintiff's concession is that he had only conceded there was probable cause for a much more limited search warrant than the one that actually issued; that according to Plaintiff a warrant could properly issue if limited to a search of areas under suspect Gleason's control, and which limited the seizure of only "certain" firearms (*i.e.,* a shotgun) believed to belonged to or under the control of *Gleason*.

That Plaintiff's claim was based on the warrant's overbreadth and not its mere issuance (the latter being wrongly suggested by the court's order), is further underscored by the authorities Plaintiff cited. Plaintiff relied heavily on two of this Circuit's decisions in which this Court held that the warrants at issue were overbroad – *United States v. Spilotro*, 800 F.2d 959 (9th Cir. 1986) and *Millender v. County of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010) (*en banc*). And in seeking partial summary judgment, Plaintiff cited and quoted to the district court the *Spilotro / Millender* test

for overbreadth. ECF 51 filed 11/5/21 @ 15:19-16:12 (3-ER-439-40).

Tellingly, the district court's 8/21/23 order never acknowledges these cases. Nor does the order even reference in any form this Circuit's test for overbreadth, let alone apply that test to the facts in this case.

*Second*: As the innocent homeowner that defendants knew he was, Mr. Brandstetter had a Fourth Amendment interest in the sanctity of his home that was "weighty." *Steagald v. United States*, 451 U.S. 204, 222 (1981). Thus, in *Liston v. County of Riverside*, 120 F.3d 965 (9th Cir. 1997), this Court reversed the district court because the officer knew the suspect's home had been put up for sale (evidence indicated the officer had seen a "for sale" sign) but did not disclose that fact to the magistrate who issued the warrant. This Court found the omitted fact highly material since it indicated *innocent persons may now reside at the home*. 120 F.3d at 974-75.

The district court's 8/21/23 Order though never acknowledges *Mr. Brandstetter's* Fourth Amendment interest in his home and property, or for that matter, his Second Amendment interest in his firearms. According to the district court, all that mattered was that (a) there was probable cause that suspect Gleason had made extortion threats against his estranged wife which included a possible shotgun-related threat of violence, and (b) defendants reasonably (and correctly) believed suspect

00158486.WPD

Gleason was residing at a residence identified to the magistrate only by its location and not mentioning who owned it and resided there other than suspect Gleason. Per the district court, those facts and nothing more justified issuing the warrant to search everywhere and for anything found at the subject property, with the police under no obligation to have told the magistrate what the officers also knew about Gleason and his living arrangements – he was an unemployed formerly homeless individual with practically no funds, living as a tenant or guest at Mr. Brandstetter's home that was also the residence of Plaintiff, his wife and disabled child.[8]

The district court stated that *Liston v. County of Riverside* was distinguishable from the present case because here Turner actually had verified that Gleason was residing at Plaintiff's home. 8/21/23 Order @ 7:21 - 8 (2-ER-8 @ 8-9). The court though misses the point of *Liston* and why it applies to Mr. Brandstetter' case.

In *Liston*, the officer who swore out the affidavit in support of the

---

[8] Should defendants argue that in fact Plaintiff's wife was not living at the residence in June 2020, and that Plaintiff did not have a wheelchair-bound child (it was Plaintiff's wheelchair-bound younger brother who for a time before the 2020 search was living with Plaintiff), the argument would be immaterial. The test is what Turner believed, not what was later discovered or learned. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Here, Turner testified she believed, based on what Gleason's estranged wife told her, that Plaintiff lived at his residence with his wife and their disabled child. 3-ER-299 @ ls. 2-3.

search warrant had information that innocent third parties may be residing at the residence, information the officer did not disclose to the magistrate who issued the warrant. *Liston* held that not telling the magistrate was a material omission because had the information about innocent parties been disclosed, the magistrate may have either demanded "additional information" about who actually lived at the residence, and may have "impos[ed] specific restrictions on [the warrant's] execution." 120 F.3d at 973-974. In other words, *Liston* recognized that the "weighty" Fourth Amendment interests of innocent homeowners (*Steagald v. United States*, 451 U.S. 204, 222 (1981)) mandated that the officer tell the magistrate that innocent parties may be residing at the home. That is the very point Plaintiff here is making. Had Turner told the magistrate about Plaintiff and his family living at the home they owned whereas Gleason was merely a guest or tenant, then the magistrate likely would have restricted the scope of the search warrant. E.g., search only Gleason's room(s); seize only his computers and/or phones; and do not seize the lawfully owned firearms defendants knew Plaintiff possessed.

So by not disclosing her knowledge that Mr. Brandstetter and his family were believed to reside Plaintiff's home, Turner denied the magistrate the information he need to insure adequate protection of Mr. Brandstetter's "weighty" Fourth Amendment interests. And once Turner's

affidavit is supplemented with the facts Turner intentionally omitted – suspect Gleason, a formerly homeless person with no money, living at Plaintiff's home as his guest or tenant and with no ownership interest in the home or Plaintiff's personal property items (Plaintiff's computers, Plaintiff's vehicles, Plaintiff's firearms), while innocent third parties (Plaintiff and his family) were the owners and lived at the residence – it is likely the magistrate would have limited the warrant's scope to suspect Gleason's property, i.e., *Gleason's* vehicles (if any), *Gleason's* computer(s), and *Gleason's* firearms (if any). Such a limited warrant would have minimized the intrusion on Plaintiff's constitutional rights. *Liston*, 120 F.3d at 969-70.

*Third*: The district court's statement that suspect Gleason "may have had access to several firearms" (8/21/23 Order @ 8:2-3 [1-ER-9]), materially and inexcusably misstated what Turner actually said in her affidavit. As shown below, the court's wording appears to be an effort to gloss over and conceal the major conflict between Turner's affidavit statement versus what Turner admits she was actually told about Gleason possessing firearms.

In her affidavit, Turner swore that suspect Gleason's estranged wife told Turner that Gleason ***presently*** possessed five different firearms of specific calibers and type (both handguns and shotguns). In her affidavit

Turner also strongly implied that the estranged wife's knowledge was both first-hand *and* reliable:

- In her affidavit, Turner said the victim told her that "her estranged husband has several guns; .38 cal., .22 cal., 9mm handgun, 12-gauge shotgun, and a 20-gauge shotgun."

3-ER-420 (top paragraph - page 10 of Turner affidavit).

Yet the deposition testimony of both the victim and Turner established that Turner's affidavit claim that the victim told Turner that she knew Gleason presently possessed firearms, was false:

- On May 1, 2020, or just a few days before Turner interviewed the victim about Gleason's possible possession of firearms, in response to a superior court domestic violence petition asking the victim if suspect Gleason "owns or possesses guns, firearms, or ammunition," the victim stated "I don't know." 3-ER-369 @ ls. 12-19; 3-ER-388 (top paragraph, question 9); *see also* 3-ER-381 @ ls. 7-13 (Victim testified that if Turner had asked her the same question victim was asked on the domestic violence petition, she would have told Turner she did not know if suspect Gleason owned any firearms.)

- The victim could not describe any handguns allegedly possessed by suspect Gleason by either type, make, model or appearance, and furthermore the victim did not know what a caliber was. 3-ER-370 @ ls.

6-20. The victim also did not know the gauge of the one shotgun she believed Gleason actually possessed at one point in the past (inherited some years earlier from his father). 3-ER-372 @ ls. 15-18.

● Asked by Turner about any firearms Gleason currently possessed, the victim texted her brother; via a text response, the brother told the victim that *years earlier* in a shooting outing with Gleason, the brother recalled five specific firearms, and in his text described them by caliber and type. The victim then relayed what her brother had texted her, telling Turner that her information about the five firearms was *not* based on her knowledge but instead came from her brother's text message, a message Turner also knew was based on a years-ago shooting event. 3-ER-371 @ line 25 to 3-ER-373 @ line 4 (Victim's testimony); *see also* 3-ER-346 @ line 9 to 3-ER-347 @ line 1, and 3-ER-348 @ line 22 to 3-ER-349 @ line 25 (Turner's testimony).

Thus, Turner's affidavit statement that the victim told Turner that suspect Gleason "*has* several guns" – present tense – was false. Turner also knew that her affidavit statement was false since Turner admitted knowing that the victim had no personal knowledge if Gleason *presently* possessed any firearms; further knew the victim's second-hand information was relayed to the victim by her brother, and that his information was based on a years-ago shooting event. Yet Turner told the

issuing magistrate that the victim said Gleason *presently* possessed five different firearms, including two shotguns!

The district court's refusal to acknowledge that Turner knew the victim's knowledge about her estranged husband's firearms was both second-hand and stale – based as it was on a years-ago event for which the victim admitted she had no personal knowledge – was inexcusable. Case law has long ago established that an officer cannot include stale information in her warrant affidavit. Instead, the information the affidavit offers must be "so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir.1997) (quoting *Durham v. United States*, 403 F.2d 190, 193 (9th Cir.1968)). Staleness is evaluated "in light of the particular facts of the case and the nature of the criminal activity and property sought." *Id.*

## II. The Seizure Of Plaintiff's Lawfully Acquired And Owned Firearms And Defendants' Subsequent Refusal To Return The Firearms, Violated Plaintiff's Second, Fourth And Fourteenth Amendment Rights.

### A. The Firearms' Initial Seizures Were Unlawful.

When Turner prepared her affidavit claiming that "[a]ny handgun, pistol, revolver, rifle, shotgun, firearm, automatic weapon" along with any item of any type related to a firearm (3-ER-414), "was used as the means

of committing a felony," "was possessed by a person with the intent to use it as means of committing a public offense or is possessed by another whom he or she may have delivered it for the purpose of concealing or preventing it discovery" and "tends to show that a felony has been committed or that a particular person has committed a felony" (3-ER-412), Turner knew that the *only* firearm connected to a crime was possibly a shotgun belonging to suspect Gleason. For reasons stated above, per this Court's *en banc Millender* decision the warrant was overbroad in authorizing seizures of all firearms and related items.

But there was more. When Turner seized the firearms, she actually knew that (a) the firearms lawfully belonged to and were under the control of Mr. Brandstetter and *not* suspect Gleason; and (b) the firearms were neither contraband nor evidence of crime. 3-ER-425 @ ls. 18-21 (In her report Turner acknowledged that the firearms "belonged to" Mr. Brandstetter and that she seized the firearms "for safekeeping.").

Turner's claim that she took Mr. Brandstetter's firearms because they were "unsecured and accessible" to suspect Gleason – a justification the district court accepted as valid, see 8/21/23 Order 8:6-7 & fn.4 (1-ER-9) -- was nonsensical. In *Millender*, Augusta Millender's shotgun was seized

00158486.WPD

from her bedroom closet.[9] Thus, access to her shotgun no different than the purported access to Mr. Brandstetter's firearms. Yet this Court still held that seizing Ms. Millender's shotgun was unlawful. Additionally, Turner's statement she needed to prevent Gleason from accessing Mr. Brandstetter's firearms made no sense – Turner had just taken Gleason into custody on felony charges, meaning he was now in jail. Yet Turner also told Mr. Brandstetter "he could get his guns back at a later date." 3-ER-425 @ ls. 20-22.

And finally, there is the serious infringement of Mr. Brandstetter's Second Amendment rights. Whether or not Mr. Brandstetter's firearms were "secured" (whatever that means) he was entitled to possess in his home his lawfully acquired and legally owned firearms. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008); *MacDonald v. City of Chicago*, 561 U.S. 742, 791 (2010). Mr. Brandstetter was never suspected of any crime while *none* of his firearms were connected to *any* crime, or other unlawful or dangerous use. Taking his firearms therefore was unconstitutional. *Baird v. Bonta*, 81 F.4th 1036, 1040-41 (9th Cir. 2023) (To

---

[9] *See* Excerpts of Record filed 11/7/07 in 9th Cir. No. 07-55518 (*Millender v. County of Los Angeles*) at page 671, third paragraph where the deputies reported that during the search of the Millender residence, "Det. Ortega found a 'Mossberg' shotgun (EV-2) in the first room north of the southwest bedroom" (i.e., August Millender's bedroom closet). (Mr. Brandstetter's counsel was also counsel for the Millenders.)

justify the government must "demonstrate[] that the regulation [of firearms] is identical or closely analogous to a firearm regulation broadly in effect when the Second or Fourteenth Amendment was ratified." (*Citing N.Y. State Rifle & Pistol Ass'n v. Bruen*, ___ U.S. ___, 142 S.Ct. 2111, 2129-30, 2133 (2022)). And nothing the district court said in its 8/21/23 Order (1-ER-2-12) remedied defendants' egregious failure of proof because the court, like defendants, made no effort to justify the seizures under *Bruen*. 81 F.4th at 1041, 1044-45 (reversing district court's denial of preliminary injunction because neither the district court nor defendants analyzed under *Bruen* the infringement of plaintiffs' Second Amendment rights).

### B. Refusing To Return Plaintiff's Firearms' Was Unconstitutional.

When Turner seized Mr. Brandstetter's firearms, she in fact knew that *none* were evidence of crime or contraband as claimed in her affidavit. 3-ER-425 @ ls. 18-22 ("The homeowner, who was present, advised the guns belonged to him. . . .the guns were collected for safekeeping."); 3-ER-331 @ ls. 7-13 (Turner admits she had no reason to doubt Mr. Brandstetter's veracity.); 3-ER-340 @ ls. 18-23 (Turner had no reason to disbelieve Mr. Brandstetter's statement that he owned the firearms.); 3-ER-304 @ ls.2-9; 3-ER-308 @ ls.2-18; 3-ER-352 @ line 6 to 3-

ER-353 @ line 15 (From California's AFS Turner learned that no firearms were registered to suspect Gleason but AFS reported that Mr. Brandstetter was the registered owner of several handguns).

Given the above facts, the continuing seizure of Plaintiff's firearms was unconstitutional. Defendants knew that firearms were not connected to any criminal activity; hence, the continuing seizure was without Fourth Amendment justification. *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017) ("A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification. Appellees have provided no justification here.").

Keeping Mr. Brandstetter's firearms for "safekeeping" was not constitutional justification. *Caniglia v. Strom*, 593 U.S. ___, 141 S.Ct. 1596, 1599-00 (2021) (Fourth Amendment does not authorize police to seize legal firearms that are not evidence of crime under a "community caretaking" exception to the warrant requirement).

Keeping the firearms also violates Mr. Brandstetter's Second Amendment rights. Neither defendants nor the district court made any effort to show that the continued seizure of Mr. Brandstetter's lawfully acquired and lawfully possessed firearms was "identical or closely analogous to a firearm regulation broadly in effect when the Second or

Fourteenth Amendment was ratified." *Baird v. Bonta*, 81 F.4th at 1040-41. That failure of justification suffices for establishing the ongoing constitutional violations. *Id.*

The Third Circuit addressed a nearly identical situation in *Frein v. Pennsylvania State Police*, 47 F.4th 247 (3rd Cir. 2022). There, the police were refusing to return to the plaintiffs their firearms. The police had seized the firearms from plaintiffs' home only to later concede that plaintiffs were the lawful owners, and that the firearms were not contraband or evidence of crime. *Held*: Defendants' ongoing refusal to return the firearms violated the Second Amendment. Just as this Circuit has done post-*Bruen* where Second Amendment interests are implicated,[10] the Third Circuit analyzed the issue under *Bruen*. The court concluded that based on *Bruen,* the police were constitutionally obligated to return to Plaintiffs their firearms. 47 F.4th at 253-56.

Finally, the district court's conclusion that defendants were justified in not returning the firearms they unlawfully seized because California state law mandated that defendant keep the firearms unless and until Mr. Brandstetter first re–established his entitlement to possess them in

---

[10] *United States v. Alaniz*, 69 F.4th 1124, 1129 (9th Cir. 2023) (This Court applies *Bruen* in determining if a sentencing enhancement "clearly comports with a history and tradition of regulating the possession of firearms.").

accordance with state law, 8/21/23 Order @ 8:15-10-16, was wrong as matter of law this Circuit's constitutional law:

> We begin with the premise, apparently not recognized by the Defendants, that the decision to impound [a vehicle] pursuant to the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment, as applied to the states by the Fourteenth Amendment. "The question in this Court upon review of a state-approved search or seizure is not whether the search (or seizure) was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment."

*Miranda v. City of Cornelius*, 429 F.3d 858, 864-65 (9th Cir. 2005) (*citing Sibron v. New York*, 392 U.S. 40 (1968)); *see also Lavan v. City of Los Angeles*, 693 F.3d 1022, 1031 (9th Cir. 2012) ( Compliance with state law did not establish Fourth Amendment reasonableness).

Thus, in *Brewster v. Beck*, this Court held that the 30 day impound of Ms. Brewster's vehicle violated the Fourth Amendment even though the impound was mandated by California law (Cal. Veh. Code § 14602.6). 859 F.3d at 1196-97; *accord, Sandoval v. County of Sonoma*, 912 F.3d 509, 516-17 (9th Cir. 2018) (same).

00158486.WPD

Again, it is significant that though *all* of the above authorities were cited and argued to the district court, the court's 8/21/23 Order (1-ER-2-12) makes no mention of any of these cases, or of the propositions for which they stand.

## III.  The District Court Erred In Not Issuing An Injunction Commanding The Return Of Plaintiff's Firearms.

As explained above, the undisputed facts established that under *Bruen*, *Caniglia*, *Brewster*, *Sandoval* and *Miranda*, the ongoing seizures of Plaintiff's firearms were continuing seizures in violation of Mr. Brandstetter's Second and Fourth Amendment rights. Consequently, as a matter of law Plaintiff established his entitlement to the issuance of a preliminary and permanent injunction mandating that defendants return to Plaintiff his unlawfully seized firearms. *Baird v. Bonta*, 81 F.4th 1036, 1043-44, 1048 (9th Cir. 2023) (Likelihood of success on the establishing a Second Amendment violation "usually establishes irreparable harm [citation omitted] and strongly tips the balance of equities and public interest in favor of granting a preliminary injunction.").

00158486.WPD

## IV.  The District Court Abused Its Discretion In Refusing To Consider If Defense Counsel Should Be Sanctioned Under Rule 11.

As mentioned, although the district court denied defendants' Rule 11 motion in a terse and short one sentence,[11] the district court never addressed Plaintiff's request that defense counsel be sanctioned under F.R.Cv.P. 11(b) for filing a patently frivolous Rule 11 motion. 2-ER-190 @ ls. 11-16. The district court's refusal to exercise its discretion was an abuse of discretion for substantial evidence showed that defendants' Rule 11 motion was plainly and clearly filed without any evidentiary or legal support:

• Defense counsel stated "It is clear from the record that Mr. Cook filed the complaint on pure speculation and never investigated the matter." 2-ER-270 @ ls, 22-23. These were factual assertions defense counsel made for which counsel offered no supporting facts. Furthermore, when defense counsel made this assertion, he knew or should haven known the assertion was false. By letter dated July 24, 2020 and which was attached to the complaint (3-ER-568-70), Plaintiff's counsel wrote RPD Chief Gonzalez regarding Turner's procurement and execution of the 6/17/20 warrant. In that letter counsel accurately summarized the gist of

---

[11] "Defendants do not meet their burden to demonstrate that sanctions are warranted under Fed. R. Civ. P. 11(b)." 2-ER-12 @ ls.18-19.

DG's allegations[12]; accurately recounted Gleason's status as a fugitive on a 2016 felony warrant *and* Turner's knowledge of that fact.

● Defense counsel stated "Mr. Cook's *entire* complaint was a lie" (2-ER-271 @ line 9 [emphasis added]).

Substantial evidence support the complaint's allegations that Turner *falsely* claimed that Mr. Brandstetter's vehicles and Mr. Brandstetter's lawful firearms were "used as the means of committing a felony," "possessed by a person with the intent to use [them] as means of committing a public offense or [were] possessed by another whom he or she may have delivered it for the purpose of concealing it or preventing its discovery," and "tends to show that a felony has been committed or that a particular person has committed a felony." 3-ER-412.

The complaint's allegations that Turner *falsely* claimed "it was necessary that searching officers seize all papers and records showing: 'the identity of persons who have dominion and control of the location, premises, automobile, or items to be seized . . . '" (3-ER-553 @ ls. 1-20) were indisputably true. As already explained, none of the crimes Turner was investigating involved or were based on dominion and control of

---

[12] The summary of DG's allegations (3-ER-569, first paragraph) did not include Gleason's "dragons breadth" threat because DG had not included it or any other threatened act of violence in her domestic violence petition filed May 1, 2020. 3-ER-369 @ ls. 12-19; 3-ER-388 (top paragraph, question 9).

Plaintiff's Rosemead residence as the crimes involved transmitting threatening message by electronic devices and an internet connection; Turner knew that Gleason whom Turner also knew was homeless and living at times out of his van, resided at Plaintiff's home as either Plaintiff's guest or tenant.

The complaint's allegations that "shortly after seizing Plaintiff's firearms, defendants Turner and RPD recognized that the firearms had no connection to any criminal activity, whether as contraband or evidence of crime [and that] Defendants also realized (as they would later admit) that there was no investigatory purpose served by continuing to withhold from Plaintiff the firearms," 3-ER-554 @ ls. 23-24, were also indisputably true. 3-ER-425 @ ls. 18-21; 3-ER-331 @ ls. 7-13; 3-ER-425 @ ls. 18-21 (Turner knew that the firearms she seized all belonged to Plaintiff, knew that Plaintiff was "credible" in claiming ownership, and seized the firearms not as evidence of crime or contraband but for "safekeeping"; defendants later admitted that they have no investigatory need for the firearms).

● Defense counsel stated "Mr. Cook admitted that he drafted the complaint based on pure speculation within 4 months of the serving of the search warrant." 2-ER-271 @ ls. 1-2. Defense counsel cites *no* evidence supporting this claim, nor can he. *See* 3-ER-550-51 (Complaint at ¶¶12-13

accurately alleges Gleason's 2016 felony criminal case and the issuance of the felony arrest warrant); ¶14 (complaint accurately recites DG's contacts with defendant Turner and the information DG provided *except* for the omission of the "dragons breadth" threat unknown by Plaintiff's counsel at the time); ¶15 (complaint accurately states that Turner checked Gleason's criminal history and found the 2016 felony case, and that DG told Turner that Gleason was residing at Plaintiff's home); ¶16(A)-(C) (complaint accurately recites the facts of Turner's procurement of the warrant based on information counsel knew at the time).

● Defense counsel claims that Plaintiff's counsel "stipulated to probable cause for the search warrant, and that there was lawful authority to seize firearms." 2-ER-272 @ ls. 13-14.

This statement was particularly egregious and inexcusable. Even the portions of the colloquy taken from Plaintiff's deposition transcript which defense counsel quoted, established that Plaintiff *never* agreed there was probable cause for the entirety of Turner's warrant, or that it was lawful for Turner to seize Plaintiff's firearms. Rather, the transcript plainly shows that Plaintiff's counsel was only saying there was probable cause for a much more limited search of Plaintiff's home, one that would *not* include seizing Plaintiff's firearms, searching Plaintiff's vehicles and searching all areas of Plaintiff's home.

The district court was thus obligated to exercise its discretion on why or why not an OSC for Rule 11 sanctions should not issue as against defense counsel.

## V. Conclusion.

For the foregoing reasons, the district court's judgment in favor of defendants should be reversed. This Court should direct entry of partial judgment in Plaintiff's favor holding that the warrant was overbroad, that Turner's affidavit contained material misstatements and omissions, and that an injunction should issue commanding the immediate return of Plaintiff's firearms. As to the remaining claims (Gonzalez and Turner's entitlement to qualified immunity and the state law claim under Cal. Civ. Code § 52.1) those should be remanded to the district court for further proceedings.

DATED: January 4, 2024

**DONALD W. COOK**
ATTORNEY AT LAW
Attorney for Plaintiff-Appellant

s/ Donald W. Cook

By_____
Donald W. Cook

00158486.WPD

## STATEMENT OF RELATED CASE(S)

Pursuant to Ninth Circuit Rule 28-2.6, Appellant certifies he is unaware of any related case pending in this Court.

DATED: January 4, 2024

**DONALD W. COOK**
Attorney for Plaintiff-Appellant

s/ Donald W. Cook

By_____
           Donald W. Cook

00158486.WPD

## CERTIFICATE OF COMPLIANCE

Pursuant to Circuit Rule 32(e)(4), counsel for Appellant hereby certifies that the brief uses proportionately spaced type at 14 point, double spaced (except for footnotes), and the word count is 10,862.

DATED: January 4, 2024

**DONALD W. COOK**
ATTORNEY AT LAW
Attorney for Plaintiff-Appellant

s/ Donald W. Cook

By_____
Donald W. Cook

00158486.WPD

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing APPELLANT'S OPENING BRIEF with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 4, 2024.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

s/ Donald W. Cook
_____
Donald W. Cook

00158486.WPD