U.S. Court of Appeals No. 23-55739

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JOHN BRANDSTETTER, an individual,
*Plaintiff-Appellant,*
*v.*
CITY OF RIVERSIDE, et al.,
*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA,
CASE NO. 5:20-CV-01866-FLA (SHKX)
HON. FERNANDO L. AENLLE-ROCHA, DISTRICT JUDGE

## APPELLEES' ANSWERING BRIEF

**OFFICE OF THE CITY ATTORNEY** – City of Riverside
Phaedra A. Norton, City Attorney (Bar No. 200271)
Rebecca L. McKee-Reimbold, Assistant City Attorney (Bar No. 279485)
Cecilia Rojas, Deputy City Attorney (Bar No. 340468)
Jacob J. Castrejon, Deputy City Attorney (Bar No. 348066)

3750 University Avenue, Suite 250
Riverside, CA 92501
Phone: (951) 826-5567
Fax: (951) 826-5540

*Attorneys for Defendants-Appellees*
CITY OF RIVERSIDE, et al.

1

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ..................................................................6

STATEMENT OF THE CASE..............................................................8

ARGUMENT ........................................................................................11

  I.   THE SEARCH WARRANT WAS NOT OVERBROAD. ...........................11

    A.  LEGAL AUTHORITY .................................................................11

    B.  THE SEARCH WARRANT AFFIDAVIT DID NOT CONTAIN MATERIAL
OMISSIONS .....................................................................................13

      1.  Appellant Living at The Rosemead Residence......................13

      2.  Appellant Was the Registered Owner Of All Vehicles............16

      3.  Appellant Owned Numerous Handguns Which Were Left Unsecured and
Accessible To All Residents Of The Rosemead Residence. ............17

    C.  THE SEARCH WARRANT AFFIDAVIT DID NOT CONTAIN MATERIAL
MISSTATEMENTS...............................................................................18

    D.  APPELLANT HAS FAILED TO PROVE DETECTIVE TURNER ACTED WITH
INTENTIONALITY OR RECKLESS DISREGARD .......................................22

    E.  THE SEARCH WARRANT WAS NOT OVERBROAD .................................22

      1.  The Warrant Was Stated with Particularity ...........................24

      2.  All Firearms and Firearms-Related Items...............................27

      3.  Dominion and Control Items ...................................................31

      4.  Vehicles....................................................................................31

      5.  All Electronic Devices .............................................................32

  II.   THE SEIZURE AND SUBSEQUENT REFUSAL TO RETURN FIREARMS TO
PLAINTIFF DID NOT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS..................33

    A.  THE INITIAL SEIZURE WAS LAWFUL .................................................33

    B.  THE SUBSEQUENT REFUSAL WAS LAWFUL.......................................35

      1.  Appellant's Misapplication of Bruen......................................36

      2.  Appellant's misapplication of Miranda and Brewster ............39

      3.  Appellant's misapplication of Frein ........................................41

      4.  Appellant Does Not Claim Cal. Penal Code § 33850 is Unconstitutional.
42

*5.* *U.S. History Regarding Regulations Of Firearms* ..................................43

III.   THE DISTRICT COURT DID NOT ERR BY NOT ISSUING AN INJUNCTION. ......44

IV.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY REFUSING TO CONSIDER PLAINTIFF'S RULE 11 MOTION ..............................................................45

CONCLUSION ..........................................................................................................46

# TABLE OF AUTHORITIES

## Cases

*Alabama v. White*, 496 U.S. 325 (1990) ...................................................10
*Barrett v. United States*, 423 U.S. 212 (1976)...........................................42
*Bravo v. City of Santa Maria*, 665 F.3d 1076 (9th Cir. 2011)................................11
*Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017) ..........................................39
*Cantwell v. Connecticut*, 310 U.S. 296, 305 (1940)........................................38
*Cervantes Orchards & Vineyards, LLC v. Deere & Co.*, 731 Fed.Appx. 570 (9th Cir. 2017) ...................................................................45
*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).......................................44
*Ewing v. City of Stockton*, 588 F.3d 1218 (9th Cir. 2009).......................................10
*Frein v. Pennsylvania State Police*, 47 F.4th 247 (3rd Cir. 2022) ........................40
*Galbraith v. City of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ...........................11
*Hervey v. Estes*, 65 F.3d 784 (9th Cir. 1995)...........................................11
*Hudson v. Palmer*, 468 U.S. 517 (1984)...................................................42
*Illinois v. Gates*, 462 U.S. 213 (1983) ............................................. 10, 11
*Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961) .......................................36
*KRL v. Moore*, 384 F.3d 1105 (9th Cir. 2004)...........................................11
*Liston v. County of Riverside*, 120 F.3d 965 (9th Cir. 1997)..........................13, 14
*Messerschmidt v. Millender*, 565 U.S. 535, 549 (2012) ................................. 31, 34
*Millender v. County of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010) .............. 27, 28
*Miranda v. City of Cornelius*, 429 F.3d 858 (9th Cir. 2005)..................................39
*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022)......... 35, 36, 37, 38
*Ornelas v. United States* 517 U.S. 690 (1996)...........................................10
*People v. Evans*, 133 Cal. Rptr. 3d 323 (Cal. Ct. App. 1983)................................10
*Rodriguez v. City of San Jose*, 930 F.3d 1123 (9th Cir. 2019) ....................... 41, 42
*United States v. Bartucci*, 658 F.Supp.3d 794 (E.D. Cal. 2023) ...........................42
*United States v. Cardwell*, 680 F.2d 75 (9th Cir. 1982) ................................. 11, 12
*United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006)...................................10
*United States v. Serrano*, 651 F.Supp.3d 1192 (S.D. Cal 2023) ...........................42
*United States v. Spilotro*, 800 F.2d 959 (9th Cir. 1991) ..................... 22, 23, 24, 25
*United States v. Stanert*, 762 F.2d 775 (9th Cir. 1985) ...........................................11
*United States v. Washington*, 797 F.2d 1461 (9th Cir. 1986).................................12
*United States v. Washington*, 797 F.2d 1461, 1472 (9th Cir. 1986).......................12
*Winterrowd v. American General Annuity Ins. Co.*, 556 F.3d 815 (9th Cir. 2009) 45

## Statutes

Cal. Penal Code § 33850(a) ...................................................................35

Cal. Penal Code § 33855 ........................................................................ 35

Cal. Penal Code § 33865 ........................................................................ 35

## APPELLEE'S RESPONDING BRIEF

## SUMMARY OF ARGUMENT

Appellant John Brandstetter ("Appellant") filed an action for 42 U.S.C. § 1983 for an unconstitutional search and seizure in violation of Plaintiff's Fourth Amendment rights, (2) injunctive relief pursuant to 42 U.S.C. § 1983, and (3) damages and injunctive relief pursuant to California law against Appellees City of Riverside (the "City"), Riverside Police Department Chief Larry Gonzalez ("Chief Gonzalez"), Riverside Police Department Detective Jolynn Turner ("Detective Turner"), and Riverside Police Department (collectively "Appellees").

Appellant allowed a third party, Kevin Gleason ("Gleason"), to reside temporarily in his home in Rosemead, California ("Rosemead Residence"). As a result of a criminal investigation against Gleason, Detective Turner sought and obtained an arrest warrant for Gleason and a search warrant for the Rosemead Residence.

The search warrant directed officers to seize any firearm at the Rosemead Residence, and, as a result, ten of Appellant's firearms were seized ("the firearms"). Appellant claims Appellees refuse to return the firearms to Appellant even though Detective Turner has since recognized that the firearms have no connection to any criminal activity by Gleason, and that no investigatory purpose is served by continuing to withhold the firearms from Appellant. However, in order

to have his firearms returned, Appellant must follow the procedures outlined in Cal. Penal Code § 33850 et seq.

In his opening brief, Appellant essentially asserts four main arguments: (1) Detective Turner's search warrant affidavit contained material omissions or misstatements of fact that mistakenly led the magistrate to grant the search warrant; (2) the parameters of the search warrant in this case were overbroad; (3) the subsequent refusal to return Appellant's firearms violated Appellant's Second, Fourth, and Fourteenth Amendment rights; and (4) the lower court abused its discretion by refusing to consider if the City should be sanctioned for filing an allegedly frivolous motion seeking Rule 11 sanctions against Appellant.

However, this Court should decide all such issues presented by Appellant in the negative for the following reasons: (1) the alleged omissions in Detective Turner's search warrant affidavit are not material, and the affidavit, as it stands, was sufficient to establish probable cause to search the Rosemead Residence; (2) the circumstances of this case indicate that the search warrant parameters were not overbroad, and the case law that Appellant relies on are distinguishable and inapplicable; (3) Appellant's Second, Fourth, and Fourteenth Amendment rights were not violated because he has not availed himself of the legal process to return the ten seized firearms; and (4) the lower court had the right to refuse to consider if the City should be sanctioned, and it is not obligated to indicate why it refused to

7

answer. Therefore, Appellee respectfully requests that the Ninth Circuit affirm the District Court's order granting summary judgment.

## STATEMENT OF THE CASE

Appellant owns the Rosemead Residence and allowed Gleason to temporarily reside there. [3-ER-550]. The Victim in this case was Gleason's estranged wife. Victim contacted Detective Turner to commence a criminal investigation against Gleason.

Detective Turner met with Victim on numerous occasions throughout the investigation via telephone, email, text message, and in-person communications to gather the pertinent information related to the investigation. [3-ER-477]. As a result, it was discovered that messages and emails had been sent to Gleason's estranged wife ("Victim") from an IP address at Rosemead Residence. [3-ER-288-290]. The messages made threats to Victim in exchange for money and illicit photographs of her and her mother. [3-ER-287]. If Victim did not comply with the demands, the email sender indicated that they would use "dragon's breath" on Victim. [3-ER-305]. Detective Turner and Victim confirmed that "dragon's breath" referred to a type of shotgun ammunition, thus implying Gleason threatening to shoot Victim. *Id*.

Appellant alleges he did not know Gleason was the subject of a criminal investigation. [3-ER-550]. Appellant's firearms were stored in the attic, unsecured,

and accessible to all residents, and were not in a locked gun safe. [3-ER-448-452, 478]. Additionally. Appellant would often leave Gleason alone at the Rosemead Residence for up to a month at a time. [1-ER-9]. Appellant additionally testified he left the doors to the attic unlocked when he was not at home. *Id*. There is no dispute that Gleason had access to both the attic and the seized firearms.

Detective Turner submitted an affidavit for a search warrant of the Rosemead Residence. [3-ER-459-475]. The majority of details provided in Detective Turner's affidavit to the judicial officer are excerpts from Victim's statements, emails of threats of violence from the suspect to Victim, and references to other related search warrants granted during this investigation. [3-ER-459-477].

Law enforcement executed the warrants on June 19, 2020. [3-ER-477]. The search warrant directed officers to seize any firearm on Appellant's property, and resulted in the seizure of ten of Appellant's lawfully owned firearms. [3-ER-459-477, 554]. Detective Turner subsequently took custody of the firearms. *Id*. Plaintiff contends Appellees have refused to return the firearms to Appellant, even though Detective Turner has since recognized that the firearms have no connection to any criminal activity by Gleason and that no investigatory purpose is served by continuing to withhold the firearms from Plaintiff. *Id*.

The procedure for the return of firearms in law enforcement custody is outlined in Cal. Penal Code § 33850 et seq. Instead of complying with Cal. Penal

9

Code § 33850 et seq., Appellant drafted letters to the Riverside Police Department for the return of his firearms. [3-ER-555]. Of course, this method fails to comport with California law, and Appellees did not return Appellant's firearms.

Appellant has further conceded to the following stipulated facts:

1. There was probable cause to obtain an arrest warrant for Kevin Gleason at the Rosemead Residence. [3-ER-454].

2. There was probable cause for a search warrant at the Rosemead Residence. [3-ER-455].

3. Detective Turner received information of Gleason's potential violence. [3-ER-456].

4. There was probable cause for seizure of the firearms. [3-ER-454].

5. Appellant has not made any application to the California Bureau of Firearms in accordance with Cal. Penal Code § 33850 et seq. [3-ER-447].

Appellant now appeals the District Court's granting of Appellees Motion for Summary Judgment. [1-ER-1-12]

# ARGUMENT

## I. THE SEARCH WARRANT WAS NOT OVERBROAD.

### A. LEGAL AUTHORITY

Probable cause exists for a search warrant if, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *People v. Evans*, 133 Cal. Rptr. 3d 323, 338 (Cal. Ct. App. 1983) (citing *Alabama v. White*, 496 U.S. 325, 330 (1990) [quotations omitted]). The term "fair probability" does not mean certainty, or even a preponderance of the evidence. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (citing *Gates*, 462 U.S. at 246). Instead, probable cause to search is established by the "known facts and circumstances that are sufficient to justify a reasonable person's belief that contraband or evidence of a crime will be [discovered]". *Evans*, 133 Cal. Rptr. 3d at 338 (citing *Ornelas v. United States* 517 U.S. 690, 696 (1996)).

When a court reviews the validity of a search warrant, it will usually uphold the search warrant if the issuing magistrate had a substantial basis for concluding that probable cause existed, based on the totality of the circumstances. *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009). A magistrate's determination of probable cause should be paid great deference by any reviewing courts; practicality and common sense should be prioritized in order to avoid

interpreting affidavits in a hyper-technical manner. *Gates*, 462 U.S. at 236.

To prevail on a Fourth Amendment violation due to an overbroad search warrant, Appellant must prove that (1) the search warrant contained misrepresentations or omissions material to the finding of probable cause, ***and*** (2) through a substantial showing, those misrepresentations and/or omissions were made intentionally or with reckless disregard for the truth. *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011); *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004); *Galbraith v. City of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002).

A court must determine whether the search warrant's affidavit, once supplemented with the correct and/or alleged omitted facts, would provide a magistrate with a substantial basis for concluding that probable cause exists. *United States v. Stanert*, 762 F.2d 775, 782 (9th Cir. 1985). If a plaintiff makes a substantial showing of deliberate falsehood or reckless disregard for the truth within the search warrant affidavit, then the plaintiff must establish that, but for the dishonesty or reckless disregard, the challenged action would not have occurred. *Hervey v. Estes*, 65 F.3d 784, 788-89 (9th Cir. 1995).

A search warrant's requirement for a specific description varies depending on the circumstances of the case and the types of items involved. *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982). Warrants that describe generic

categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible. *Id*. Additionally, reference to a specific illegal activity within a search warrant affidavit can, in appropriate cases, provide substantive guidance for an officer's exercise of discretion in executing the search warrant. *United States v. Washington*, 797 F.2d 1461, 1472 (9th Cir. 1986).

## B. THE SEARCH WARRANT AFFIDAVIT DID NOT CONTAIN MATERIAL OMISSIONS

In his opening brief, Appellant argues the search warrant affidavit that Detective Turner submitted contained material misstatements and omitted other material facts. Along those lines, Appellant alleges these material misstatements and omissions mistakenly led the magistrate to authorize an overly broad search warrant. However, case law and the circumstances surrounding the search warrant support two conclusions: (1) that under the law, Detective Turner's affidavit contained no material misstatements or omissions, and was sufficient to establish probable cause; and (2) that the authorized search was not overbroad, and instead, can be supported by case law and the facts known to law enforcement at the time.

### 1. *Appellant Living at The Rosemead Residence.*

Appellant's Opening Brief argues that Detective Turner omitted various material facts that allegedly should have been disclosed to the magistrate upon review. Appellant's assertions related to the alleged material omissions within

13

Detective Turner's affidavit mainly surround the fact that the affidavit does not mention that (1) persons other than Gleason resided at the Rosemead Residence, (2) Appellant or his family were living at the Rosemead Residence and Appellant was the homeowner, (3) Appellant and his family had no involvement in Gleason's criminal activities.

To assert that these alleged omissions were material and should have been included in Detective Turner's affidavit, Appellant relies on *Liston v. County of Riverside*, 120 F.3d 965 (9th Cir. 1997). However, the facts in *Liston* are wholly distinguishable from the circumstances of the case at hand. In fact, this Court's ultimate ruling in *Liston* actually supports the Appellee's claim that the affidavit was sufficiently written under the law, and the alleged omissions and misstatements were not material to begin with.

In *Liston*, law enforcement had been preparing a search warrant affidavit for an individual named James Hill, who investigators believed was living at a specific residence. *Id.* at 968-969. At some point before submitting the affidavit to the magistrate, law enforcement drove by the residence to verify its address and write a premises description. *Id*. at 969. The residence had a "for sale" sign in the front yard, but law enforcement omitted this detail in the affidavit that was submitted to the magistrate. *Id*. After the search warrant was granted, law enforcement entered the residence, only to find that Hill no longer lived there; the Liston family

purchased the house from Hill and had moved in only a few days earlier. *Id*. at 970-971.

Using standards set forth in *Hervey*, the *Liston* court concluded that if the affidavit had been supplemented with the "for sale" sign fact, the magistrate would have determined that no probable cause existed to search the residence; but for the omission of that fact, the search warrant would not have been granted. *Liston, supra*, 120 F.3d at 974 (citing *Stanert*, *supra*, 762 F.2d at 782; *Hervey, supra*, 65 F.3d at 788-89). Essentially, the "for sale" sign would have put a reasonable magistrate on notice that a change in occupancy would be occurring in the near future, if it had not already occurred. *Id.* at 974.

Appellant uses *Liston* to argue that had Detective Turner told the magistrate that Plaintiff was the homeowner, lived at the Rosemead Residence with his family and none of them had any involvement in Gleason's crimes, it is likely the magistrate would not have authorized an overbroad warrant. This is purely speculative and demonstrably false. When reviewed with the same analysis this Court used in *Liston*, these facts show no material omissions or misstatements of fact were made in Detective Turner's search warrant affidavit.

Firstly, the issue in *Liston* was whether the suspect *actually lived* at the residence. A "for sale" sign contains a level of ambiguity which could mean the subject of the search warrant may no longer live at the residence to be searched

when the search warrant is executed by law enforcement. It could also mean that new individuals may be living at the residence by the time law enforcement decides to execute the search warrant.

In the case at hand however, there is no such ambiguity; through a lengthy law enforcement investigation in conjunction with other officers and individuals, Detective Turner knew that Gleason was living at Appellant's residence, had issued his threats to the Victim from that residence, and had the means to carry out those threats. [3-ER-287-290, 305, 477]. Further, there was no question whether Gleason was about to move from the house, or whether he would be absent by the time the search warrant was executed. Considering Gleason's threats of violence, coupled with Victim's statement that Gleason may have had access to several firearms show that there was probable cause to believe a crime had occurred, future crimes could occur, and that anyone at the Rosemead Residence could be involved in Gleason's criminal activity.

If Detective Turner's affidavit had been supplemented with information about Appellant, his family, and his firearms, would the magistrate still have had a substantial basis that probable cause exists, as the *Stanert* standard requires? The answer remains yes. The various facts that Appellant asserts are actually not material for the purposes of establishing probable cause.

## 2.    *Appellant Was the Registered Owner Of All Vehicles.*

16

The fact that the vehicles at the Rosemead Residence belonged to Gleason and were all registered to Appellant does not change the gravity of Gleason's criminal activity and Gleason's potential use of these vehicles. Appellant has not even established the relevancy of including this fact in Detective Turner's affidavit, let alone the materiality of its omission.

### 3. *Appellant Owned Numerous Handguns Which Were Left Unsecured and Accessible To All Residents Of The Rosemead Residence.*

According to Appellant, had Detective Turner's affidavit included: (1) Detective Turner's knowledge of a specific handgun and (2) the fact Plaintiff was the lawful owner of numerous handguns, the issuing magistrate would have issued a narrower warrant only identifying Gleason's specific handgun. Appellant misses the issue with this argument: it is irrelevant whether Appellant's handguns were registered to him or not, the relevancy is that Gleason had access to these handguns.

Not only were Appellant's handguns found in an unsecured and accessible area, rather than in a locked safe, Appellant admits he would leave Gleason alone at the Rosemead Residence for up to a month at a time and he would leave the doors to the room unlocked when he was not at home. [1-ER-9; 3-ER-448-452, 478]. Appellant's firearms were seized due to a valid warrant. Appellant cannot

claim a Fourth Amendment violation from an overbroad search warrant due to his own negligent firearm keeping.

Along that same thought process, Appellant argues that Turner could not have reasonably believed Gleason *currently* possessed a handgun simply because the Victim told Detective Turner Gleason had inherited a shotgun from his father, the Victim knew Gleason had a handgun of an unknown type years earlier, and Gleason had no record of owning a firearm. This argument, again, naively assumes Gleason does not have access or control to any other firearm.

The fact of the matter remains the same: Gleason made threats to not only post illicit photos of the Victim in exchange for money, but also to use "dragon's breath" ammunition on her in retaliation. Essentially, Gleason had threatened to harm the Victim using a firearm if she did not comply with his demands. Appellant attempts to argue that the rest of his firearms should not have been seized because "dragon's breath" is a type of shotgun ammunition, and this apparently means that Gleason had only planned to harm Victim with a shotgun. But a practical and common-sense review of this fact should highlight the fact that Gleason was threatening to kill Victim and would be able to do so if he had any firearm at his disposal.

### C. THE SEARCH WARRANT AFFIDAVIT DID NOT CONTAIN MATERIAL MISSTATEMENTS

18

Appellant also argues that Detective Turner's affidavit contained material misstatements of fact, primarily alleging that the affidavit failed to mention that the Victim had gained some of her information about Gleason's firearms from her brother, Patrick.

However, Victim told Detective Turner she knew Gleason possessed several firearms, including a shotgun, that were passed down to him from his father after he passed away. 3-ER-477]. Accordingly, Detective Turner reflected this information in the search warrant affidavit.

Appellant attempts to show that this is a material misstatement of fact, and claims that the affidavit says that Victim had "personal knowledge" that Gleason owns multiple firearms. However, this claim, in and of itself, is a misstatement because Detective Turner's affidavit does not even use the term "personal knowledge." [3-ER-459-475]. Instead, the affidavit says that "[Victim] said her estranged husband had several guns..." *Id*. When Victim's statements and deposition are looked at without Appellant's lens, it is evident that (1) she was aware from personal experience that Gleason had a shotgun and handgun, and (2) she was also aware through her brother's personal experience that Gleason had used and shot multiple other firearms in the past, leading her to believe that Gleason owned these firearms as well.

Appellant also claims that because Victim gained some of this information

19

from her brother Patrick, that it suddenly means that Detective Turner's affidavit had misstatements. While the affidavit does not mention that Victim obtained some of her information from her brother, such information, even if included, would have been irrelevant because Victim still obtained this information and was under the impression that Gleason had firearms in his possession or control. Victim was afraid for her and her children's safety because of the homicidal threats Gleason personally made to her. Detective Turner's affidavit clearly reflects these facts and the potential danger Victim was in, especially when keeping in mind that Gleason's personal firearms were not the only ones he evidently had access to.

In fact, the evidence shows that Gleason had multiple firearms and vehicles available to him at the Rosemead Residence, which would enable him to carry out his threats against the Victim, i.e., a vehicle would enable him to travel to Victim's location, and a firearm would provide him a weapon to carry out his threat and kill her.

In addition (and as the standard in *Hervey* indicates), but for the alleged omissions and misstatements in the affidavit, the search of Appellant's residence would still have occurred. As the above analysis indicates, the magistrate would have still granted the search warrant under the same parameters. Proof of probable cause in Detective Turner's affidavit is not rooted in the Appellant, Appellant's family, or the fact that Appellant had registered firearms and vehicles at the

20

Rosemead Residence. Instead, the affidavit was granted because probable cause was rooted in the fact that: (1) Gleason had used technology/email when he threatened to post illicit photos of Victim if Victim did not send money, more photos, or have sex with an ex-partner; (2) Gleason had threatened to shoot Victim if she did not comply with his demands; (3) Gleason was confirmed to be living at the Rosemead Residence through various electronics warrants and investigations; (4) Gleason had firearms in his possession; and (5) under case law, it was reasonable to believe that Gleason had access to other firearms at Appellant's residence.

Therefore, both the issuing Magistrate and the District Court correctly found probable cause existed due to Gleason's threat of extortion to Victim, his threats of violence against Victim, Victim's statements that Gleason may have access to personal firearms, and the fact that Gleason could have access to firearms at the Rosemead Residence that he could use to carry out his threats against Victim. The fact that Appellant lived at the residence, Victim obtained some of her information from her brother, and the vehicles and firearms at the Rosemead Residence belonged to Appellant do not detract from the above facts establishing probable cause. The fact of the matter is that despite these facts being omitted, said omissions do not change the circumstances of the case. Instead, the facts that Appellant's case hangs on were all immaterial and irrelevant to a finding of

21

probable cause, as Appellees already established above.

### D. APPELLANT HAS FAILED TO PROVE DETECTIVE TURNER ACTED WITH INTENTIONALITY OR RECKLESS DISREGARD

To prevail in the instant action, Appellant must show that: (1) Detective Turner's affidavit contained omissions and/or misstatements of fact material to a probable cause finding, **and** (2) said omissions and/or misstatements of fact were made **intentionally or with reckless disregard for the truth**. *Bravo*, *supra*, 665 F.3d at 1083.

The second prong need not even be analyzed because, as explained above, Appellant has failed to show that the alleged omissions and misstatements in the affidavit are material. However, for the sake of argument, even if the alleged omissions and misstatements of fact were material in this matter, Appellant has presented no evidence nor made any argument to prove that Detective Turner acted with intentionality or reckless disregard in omitting the stated facts. *Bravo*, *supra*, 665 F.3d at 1083. As it stands, the affidavit and search warrant included all the facts necessary to conduct a search of Appellant's residence.

### E. THE SEARCH WARRANT WAS NOT OVERBROAD

Courts usually review the issuance of a search warrant deferentially and uphold it if the issuing judge "had a substantial basis for concluding that probable cause existed based on the totality of the circumstances." *Ewing, supra*, 588 F.3d at

1223 (internal quotation, brackets, and citations omitted). Here, there is clear evidence and stipulations of the following: 1) the suspect made violent threats; 2) the suspect threatened to harm or kill the victim; 3) there was probable cause for the search warrant; 4) there was probable cause to seize certain firearms; and 5) the firearms were in an unlocked area of the residence accessible to Gleason. [1-ER-9; 3-ER-448-287, 452, 454, 455, 478].

Appellant relies on *United States v. Spilotro*, 800 F.2d 959 (9th Cir. 1991) to set the standard for the test for overbreadth. Under *Spilotro*, to determine if a warrant was overbroad, the Court addresses:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*Spilotro, supra*, 800 F.2d at 963.

Here, Appellant argues that the parameters of the search warrant were overbroad because it authorized law enforcement to search throughout the Rosemead Residence for any vehicles, firearms, computers/electronic data processers, and items establishing the identity of persons who have dominion and

23

control of the residence and items to be seized. Appellant's opinion is that, in light of the alleged omissions and misstatements of material fact, these parameters were too broad and should have been more succinct.

### 1. *The Warrant Was Stated with Particularity*

Primarily, Appellant relies on *Spilotro* to assert that warrant could have been stated with more particularity. However, the facts and circumstances within *Spilotro* are vastly different from those in the case at hand. In *Spilotro*, the FBI discovered the defendants were involved in a loan sharking and bookmaking business and issued seventy search warrants to support a widespread search of a jewelry store and residence. *Spilotro, supra*, 800 F.2d at 960-961. As part of this search, various types of evidence were seized, including jewelry, gemstones, notebooks, documents, etc. *Id*. at 961-962.

The District Court and 9th Circuit both concluded that the search warrants were overbroad. *Id*. at 968. For starters, a portion of the supporting affidavit is a lengthy chronology of surveillance and wiretaps, which showed a general pattern of criminal wrongdoing, but no strong evidence of isolated criminal transactions. *Id*. at 961. Additionally, the search warrants directed law enforcement to search and seize notebooks, documents, jewelry, gemstones, and other items in violation of various United States Code Title 18 ("Title 18") sections. *Id*.

The 9th Circuit wrote that, as the search warrants stood, the FBI authorized

wholesale seizures of entire categories of items not generally evidence of criminal activity, and did not provide any guidelines to distinguish lawful items from unlawful items. *Id*. at 964. For example, all jewelry and documents were seized at the jewelry store and residence; the 9th Circuit indicated that the FBI could have described in greater detail the items one expects to find on loan shark premises and in bookmaking notebooks. *Id*. Instead, all the search warrants described were a history of general criminal wrongdoing, and an overly expansive list of items to be seized.

The 9th Circuit even said that the generic and expansive list of item descriptions in the search warrants may not have been fatal if the warrants had more specifically identified the alleged criminal activities that had occurred. *Id*. Instead, the search warrants described general criminal activity and over a dozen Title 18 sections that could have been violated through the course of loan sharking/bookmaking. *Id*. at 964-965. In fact, the 9th Circuit concluded that the statutes in question likely encompassed several hundred separate criminal acts that the defendants could have violated. *Id*. at 965.

Overall, the 9th Circuit concluded that probable cause did not exist to seize all items described in the warrant, that the search warrants failed to establish objective standards that officers could use to differentiate items subject to seizure from those not subject to seizure, and that the FBI could have described the listed

items more particularly in light of the case's circumstances. Here, Appellant uses *Spilotro* to argue that the search warrant parameters (a search of all vehicles, electronics, and firearms at the Rosemead Residence) were too broad. However, the circumstances regarding Detective Turner's search warrant can be distinguished from *Spilotro*.

First, Detective Turner's affidavit and search warrant describe specific dates and instances in which Gleason sent emails to Victim in an attempt to extort and threaten her into compliance. [3-ER-459-475]. Said facts are the opposite of a "general pattern of criminal wrongdoing," and instead highlight the facts behind each threat and the exact words that were used as well. *Id*. *Spilotro, supra*, 800 F.2d at 961. Additionally, rather than listing over a dozen criminal statutes that Gleason may have violated, the affidavit describes the specific acts that Gleason committed against Victim, and the potential of him doing so again due to the firearms at his disposal. [3-ER-459-475].

Second, and as *Cardwell* indicates, the facts surrounding Gleason and his threats to Victim warranted the type of search warrant that was granted in this case. *Cardwell, supra*, 680 F.2d at 78. Appellant may argue that the search warrant parameters in this case were too generalized, as the *Spilotro* search warrant was, but the circumstances of Gleason's conduct justify the fact that a more precise description of searchable items was not possible.

26

As has been already described, Gleason sent various emails to Victim to solicit illicit photographs of her, and to threaten her with posting photographs in his possession if she did not comply with his demands. [3-ER-287, 477]. Additionally, Gleason threatened to shoot Victim with "dragon's breath" if she continued to not listen. [3-ER-305]. A criminal investigation revealed that those emails were coming from Appellant's residence, Gleason had firearms in his possession, and under case law, he likely had access to other firearms at Appellant's residence. [3-ER-288-290]. All these facts were stated in the warrant and affidavit. [3-ER-459-475].

Therefore, there was probable cause to believe Gleason had threatened Victim through electronic means and that he had the ability to carry out those threats due to the tools accessible to him and in his possession. These circumstances warranted a search warrant that granted officers the authority to search the residence and any vehicles, electronics, and firearms that could be found in and around it. It would have been impossible to distinguish which electronic device(s) these threats came from without seizing and inspecting those devices in the first place. Therefore, the warrant was stated with sufficient particularity.

## 2. All Firearms and Firearms-Related Items

Appellant asserts that none of his firearms should have been seized because Gleason's threat to Victim concerned "dragon's breath," and that term referred to

27

ammunition for a shotgun, not other types of firearms. Essentially, Appellant alleges that the search warrant was overbroad because Detective Turner should have known that Appellant's personal property would be at the Rosemead Residence, and that said property would be unconnected to Gleason's criminal activity.

Appellant misses one crucial issue in his analysis: Appellant's firearms were stored in Rosemead Residence attic, unsecured, and accessible to all residents, including Gleason, and were not in a locked gun safe. [1-ER-9; 3-ER-448-452, 478]. It is undisputed Gleason had access to Appellant's handguns. *Id*. Appellant testified at deposition that he allowed Gleason to live with him because he "wanted someone to stay at [his] house when [he] was going to be out of town," and that he left Gleason alone at the house for up to a month at a time. *Id*. Appellant additionally testified he left the doors to the attic unlocked when he was not at home. *Id*. Therefore, Gleason could have used anything accessible to him within the home, including Appellant's handguns, to carry out his threats against Victim.

Appellant relies on *Millender* to argue the warrant for search and seizure of Appellant's firearms was overbroad. *Millender v. County of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010). In *Millender*, a female subject was assaulted by her ex-boyfriend and was able to successfully escape from him using her vehicle. *Id*. at 1020. During the escape, the female subject saw her ex-boyfriend pull out a black

28

sawed-off shotgun, and saw him shoot at her vehicle as she sped away. *Id*. at 1021. As part of the criminal investigation, the female subject described the shotgun to law enforcement and even provided them with a photograph of the firearm. *Id*. at 1022. However, the prepared affidavit and search warrant authorized search and seizure of all types of firearms. *Id*.

This Court concluded the search warrant was overbroad, primarily because the affidavit did not set forth any other evidence indicating that the ex-boyfriend owned or used any other firearms, or that any other firearms would be found at the residence to be searched. *Id*. at 1025. Additionally, because an assault against the female subject had already occurred, and a description and photo of the involved firearm had been given, there could be no further justification for seizure of other firearms. *Id*. at 1027.

Here, Gleason, fortunately, was never able to assault Victim, but he did make threats that he would shoot her with "dragon's breath" if she did not comply with his demands. [3-ER-305]. Appellant claims that because Gleason used the word "dragon's breath," that Gleason would only use a shotgun to shoot Victim, even if Gleason had an arsenal of weapons available to him. However, this is hyper-technical analysis that is frowned upon by cases such as *Illinois v. Gates*, which encourages courts to use common sense and practicality when analyzing search warrants. *Gates, supra*, 462 U.S. at 236.

A commonsense view of the circumstances shows that Gleason made a threat against Victim that would cause her great bodily injury and/or death, and practicality presumes that Gleason would use any firearm he has access to in order to cause that harm to Victim. Essentially, the exact syntax of Gleason's threat (that he would use "dragon's breath") is not as important as the substance of Gleason's threat (that he would cause great bodily injury and/or death to Victim by use of a firearm).

Unlike the search warrant affidavit in *Millender*, the affidavit in this case specified that Gleason owned firearms and had access to firearms. [3-ER-459-475]. One of the reasons the *Millender* search warrant was deemed overbroad in the first place was because there was no evidence to suggest that firearms would be found at the residence to be searched. *Millender, supra*, 620 F.3d at 1025. Here, the investigation revealed that Gleason had firearms and likely access to others. All of this suggests that Detective Turner's search warrant and affidavit were not overbroad, but on the contrary, were sufficient to establish probable cause to seize any firearms found at the Rosemead Residence.

Therefore, because RPD knew that Gleason had firearms in his possession and that there would likely be other firearms located at the Rosemead Residence, there was probable cause for the search and seizure of any and all firearms at the Rosemead Residence.

30

### 3.     *Dominion and Control Items*

Documentation showing dominion and control is patently relevant because such documentation helps to establish the identities of individuals who have property connected to the search warrant itself. *United States v. Alexander*, 761 F.2d 1294 (9th Cir. 1985).

In order to establish the various items in the search warrant were used, or could be used, in correlation with the given threats, the investigating officer requires items indicating dominion and control, knowing that multiple different items could be subject to the search warrant's parameters. Accordingly, all documentary evidence relevant to establishing a defendant has violated state law (including documents showing dominion and control) is reasonable in search warrant terms. Moreover, evidence establishing dominion and control is relevant to the particularity requirement, and appellant's standing to challenge the search in the first place.

Therefore, items indicating dominion and control were necessary to include in the warrant.

### 4.     *Vehicles*

Additionally, Appellant argues that a search of vehicles is overbroad because neither the Rosemead Residence nor the vehicles belong to Gleason and, instead, were registered to Appellant or his deceased father. However, contrary to what

31

Appellant argues, this evidence is relevant because all vehicles were available for Gleason's use if he wished to carry out his threats against Victim.

Appellant argues Gleason's underlying crime had nothing to do with the use of a vehicle, when in reality, Gleason's crimes surrounded tormenting Victim and her family. Appellant further claims the overbreadth is more egregious than in *Millender*. However, keeping *Millender* in mind, this argument also fails because, in *Millender*, the search warrant was deemed overbroad because the ex-boyfriend had already threatened the female subject, used a specific weapon in the process, and no further weapons were thought to be located at the residence to be searched. *Millender, supra*, 620 F.3d at 1025. Here, RPD was able to confirm that Gleason had made violent threats to Victim, and that vehicles were on the Rosemead Residence premises that Gleason had access to. [3-ER-287-290, 305, 477]. Gleason could have used the vehicles to act on his threats to Victim at any moment, and the vehicles could also have been used to conceal other evidence of Gleason's crimes not already within the house.

### 5. *All Electronic Devices*

There is no question that RPD knew that electronics at the Rosemead Residence were used by Gleason to send threats to Victim. Appellant attempts to nitpick the subject search warrant, instead of reading it as a whole. As explained above, the purpose of searching for items evidencing dominion and control is to

32

establish the ownership or possession of certain items.

The warrant allowed Detective Turner to seize any electronics which could have been an instrumentality of Gleason's crimes. [3-ER-459-475]. However, Detective Turner decided to only seize those items Gleason personally identified as his, or were in his actual possession. As a matter of public policy, law enforcement should not be punished for exercising reasonable restraint to be as precise as possible under the circumstances. As such, Detective Turner should not be punished for not seizing other electronic devices not identified to be subject of Gleason's criminal acts.

Therefore, Appellant's overall claim that Detective Turner's search warrant and affidavit are overbroad is incorrect. Considering (1) Gleason's threats, (2) confirmed facts regarding firearms in Gleason's possession, and (3) a likelihood that other firearms would be found at the Rosemead Residence, even if this Court views the search warrant parameters as slightly general, the warrant is justified under *Cardwell* and establishes a finding of probable cause.

## II. THE SEIZURE AND SUBSEQUENT REFUSAL TO RETURN FIREARMS TO PLAINTIFF DID NOT VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS

### A. THE INITIAL SEIZURE WAS LAWFUL

As explained at great length above, Appellant's firearms were confiscated as a result of a judicially authorized search warrant. [3-ER-454, 455, 459-475]. There

33

was no Second or Fourth Amendment violation in the initial seizure of Appellant's firearms.

Appellant argues that the seizure of Appellant's handguns was unlawful because the plaintiff's shotgun in *Millender* was seized from her bedroom closet.[1] Though accompanied by a well-seasoned lawyer, experienced in Federal Court, including this Court, Appellant does not understand the significance of his firearms being "unsecured and accessible" to Gleason. Simply put, Appellant's firearms were not in a locked gun safe. [1-ER-9; 3-ER-448-452, 478]. As the District Court correctly found, Appellant, has not present any evidence to establish that Gleason could not have entered the attic or obtained access to the firearms.

It is irrelevant that Appellant was never suspected of any crime. It was enough that Gleason was suspected of a crime and Gleason was residing at the Rosemead Residence. Appellant had handguns in the Rosemead Residence which were directly accessible by Gleason. During the criminal investigation involving the extortion-related threats Victim received, through deductive analysis, Victim

---

[1] Not only was Appellant's counsel the Counsel for Millender in *Millender v. County of Los Angeles*, Appellant's counsel does not cite to *Millender* or any of its subsequent appeals in referencing the location of the plaintiff's found shotguns. Instead, Appellant's counsel directs the Court to the Excerpts of Record filed with this Court in the *Millender* case.

and Detective Turner were able to infer that Gleason was likely the sender of these various threats. However, the only fact that could be confirmed at this time was that the threatening messages were being sent from Appellant's residence. While Gleason was the primary suspect listed in Detective Turner's search warrant and affidavit, said information wasn't confirmed until the search warrant had already been executed, and the electronic devices examined. For all intents and purposes, during the drafting of the search warrant and affidavit, any individual at the Appellant's residence could have been the one to send the threats to Victim. It wasn't until the search warrant had already been executed that it was confirmed that Gleason was the one to send the threats from his laptop.

Evidence of one crime is not always evidence of several crimes, but given Gleason's possession of one illegal gun and his threats to victim, a reasonable officer could conclude that there would be additional guns at the residence. *Messerschmidt v. Millender*, 565 U.S. 535, 549 (2012).

### B. THE SUBSEQUENT REFUSAL WAS LAWFUL

Any allegation Appellant makes arguing Appellees continuous refusal to return his firearms is a blatant red herring. Appellant is patently preventing himself from regaining his firearms. [3-ER-447].

California Penal Code § 33850 provides: "Any person who claims title to any firearm that is in the custody or control of a court or law enforcement agency

and who wishes to have the firearm returned ***shall make application for a determination by the Department of Justice as to whether the applicant is eligible to possess a firearm***." Cal. Penal Code § 33850(a). (Emphasis added).

Essentially, Cal. Penal Code §33850 et seq. requires a firearms owner, having had their firearms confiscated by a law enforcement agency, submit an online application to the California Department of Justice Bureau of Firearms ("DOJ"), which regulates the manufacture, sale, ownership, safety training, and transfer of firearms. *Id*. Once received, the DOJ must review the application and determine the applicant's eligibility to possess firearms, based on a background check. Cal. Penal Code § 33865. Until the eligibility determination, the law enforcement agency is ***prohibited*** by law from releasing the confiscated firearms. Cal. Penal Code § 33855. Here, Appellant, for no reason stated, refuses to comply with Cal. Penal Code § 33850 to regain his firearms.

### 1.  *Appellant's Misapplication of <u>Bruen</u>*

Appellant cites *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), as an attempt to show the seizure of his firearms was unlawful. The dispute in *Bruen* surrounded the constitutionality of the state of New York's issuance of public carry licenses only when the applicant had demonstrated a "proper cause" for a special need for self-defense. *Bruen, supra*, at 2117. The U.S. Supreme Court ruled that "when the Second Amendment's plain text covers an individual's

36

conduct, the Constitution presumptively protects that conduct. The government

must then justify its regulation by demonstrating that it is consistent with the

nation's historical tradition of firearm regulation. Only then may a court conclude

that the individual's conduct falls outside the Second Amendment's 'unqualified

command.'" *Id*. at 2126 (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50

(1961)).

Further, as the *Bruen* court recognized, there is a history of prohibiting the

access to firearms to persons convicted of crimes: "[t]hroughout modern Anglo-

American history, the right to keep and bear arms in public has traditionally been

subject to well defined restrictions governing the intent for which one could carry

arms, the manner of carry, or the exceptional circumstances under which one could

not carry arms. Nor is there any such historical tradition limiting public carry only

to those law-abiding citizens who demonstrate a special need for self-defense."

*Bruen, supra*, 142 S. Ct. at 2138.

> To be clear, nothing in our analysis should be interpreted to suggest the
> unconstitutionality of the 43 States' "shall-issue" licensing regimes,
> under which "a general desire for self-defense is sufficient to obtain a
> [permit]." *Drake v. Filko*, 724 F. 3d 426, 442 (CA3 2013) (Hardiman,
> J., dissenting). Because these licensing regimes do not require
> applicants to show an atypical need for armed self-defense, they do not
> necessarily prevent "law-abiding, responsible citizens" from exercising
> their Second Amendment right to public carry. *District of Columbia v.
> Heller*, 554 U. S. 570, (2008). Rather, it appears that these shall-issue
> regimes, which often require applicants to undergo a background check
> or pass a firearms safety course, are designed to ensure only that those

37

bearing arms in the jurisdiction are, in fact, "law-abiding, responsible citizens." *Ibid.* And they likewise appear to contain only "narrow, objective, and definite standards" guiding licensing officials, *Shuttlesworth v. Birmingham*, 394 U. S. 147, 151, (1969), rather than requiring the "appraisal of facts, the exercise of judgment, and the formation of an opinion," *Cantwell v. Connecticut*, 310 U. S. 296, 305, 60 S. Ct. 900, 84 L. Ed. 1213 (1940)—features that typify proper-cause standards like New York's.

*Bruen, supra*, 142 S. Ct. at 2138, fn. 9

Here, the statutory framework for the return of firearms under Cal. Penal Code § 33850 et seq. is an objective standard, rather than a subjective standard similar to the standard at issue in *Bruen*. Cal. Penal Code § 33850 et seq. does not require an individual resident to show through "proper cause" that he or she is entitled to the return of the confiscated firearms. In fact, Cal. Penal Code § 33850 et seq. does not even require an individual to show how they intend to use the firearms or whether they seek to possess the firearms in a residence or in public. All an individual must do is submit an application to DOJ with (1) the individual's identifying information, (2) whether the applicant is a U.S. citizen, (3) the identifying features of the firearm(s), (4) a valid drivers' license, (5) the name of the law enforcement agency, and (6) a signature. Cal. Penal Code § 33850. Every individual must follow the same objective procedure. *Id.*

*Bruen*, on the other hand, dealt with a subjective standard where each individual was required to prove a subjective "proper cause" existed for a special need for self-defense. *Bruen, supra*, at 2117. The purpose of Cal. Penal Code §

38

33850 et seq. is not to place restrictions on an individual's ability to possess firearms, but instead to safeguard the law-abiding public of California, so that neither firearms, nor ammunition, fall into the hands of dangerous individuals, including persons convicted of or accused of serious crimes.

Therefore, Cal. Penal Code § 33850 et seq. is constitutional since undergoing a background check is designed to ensure that only those bearing arms in California are, "in fact, law-abiding, responsible citizens." *Bruen, supra*, 142 S. Ct. at 2138 (… And they likewise appear to contain only "narrow, objective, and definite standards" guiding licensing officials, *Shuttlesworth* v. *Birmingham*, 394 U.S. 147, 151, 89 S. Ct. 935, 22 L. Ed. 2d 162 (1969), rather than requiring the "appraisal of facts, the exercise of judgment, and the formation of an opinion," *Cantwell v. Connecticut*, 310 U.S. 296, 305 (1940)). Further, Appellant is not on equal footing as the Plaintiffs in *Bruen* because Appellant's firearms were taken as a result of a valid warrant.

## 2. *Appellant's misapplication of <u>Miranda</u> and <u>Brewster</u>*

Appellant further cites to *Miranda v. City of Cornelius* and *Brewster v. Beck* to support his contention that RPD's retention of his firearms is unlawful. Appellant uses *Miranda* to argue that the decision to impound property pursuant to a state statute does not, in and of itself, determine the reasonableness of a property seizure under the Fourth Amendment. *Miranda v. City of Cornelius*, 429 F.3d 858,

864 (9th Cir. 2005). Appellant uses *Brewster* to claim that a property seizure is justified under the Fourth Amendment only to the extent that the government's justification for the seizure stands; if not, the government must cease the seizure or secure a new justification. *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017).

However, the case at hand is distinguishable from both *Miranda* and *Brewster* in several ways. First, and which has been discussed at length, the decision to seize Appellant's firearms was based on a valid search warrant, and thus the reasonableness of said property seizure is presumably and otherwise valid under the Fourth Amendment. Additionally, *Brewster* involved an individual whose vehicle was seized under the authority of the California Vehicle Code. *Id*. at 1195. Already, that case stands in stark contrast to the case at hand, which involves a seizure of firearms, not a vehicle.

Most importantly, the vehicle owner in *Brewster* complied with the statutory procedure laid out in the California Vehicle Code in order to regain possession of his vehicle, and only filed suit once that process had been attempted. *Id*. at 1196. Here, Appellant still has not attempted to follow the procedure set forth in Cal. Penal Code § 33850 et seq. in order to regain possession of his firearms. Essentially, he is causing his own delay, and since a post-deprivation remedy is available, Appellant cannot claim that his firearms have been unlawfully retained.

### 3. *Appellant's misapplication of <u>Frein</u>*

Appellant claims the Third Circuit addressed a nearly identical situation in *Frein v. Pennsylvania State Police*, 47 F.4th 247 (3rd Cir. 2022). However, this is another red herring from Appellant. In *Frein*, the police, pursuant to a valid warrant, seized the plaintiffs' firearms in connection to a crime in which plaintiffs' son committed. *Id* at 250-251. The government did not use the firearms it had seized and never alleged that any of plaintiffs' firearms were involved in the crime. *Id*. However, the government claimed they might need the firearms as evidence if the son's state or federal habeas petition yields a new trial. *Id*. The Court found that while the warrant immunizes the officers who first seized the firearms, that warrant was tied to the son's trial and, therefore, the immunity ran out by the time the parents sued. *Id.* at 256. "If the government wants to keep the property after the conviction becomes final, it needs some justification." *Id*. at 253. "A new warrant or other proof of continued compliance with the Fourth Amendment could justify retention for collateral review, say, or a new investigation or prosecution. But the government offers no such justification." *Id*.

Here, Appellees are not withholding Appellant's firearms on the basis that they are evidence of a crime. Instead, the firearms have not been returned to Appellant's refusal to comply with Cal. Penal Code § 33850. [3-ER-447].

### 4. *Appellant Does Not Claim Cal. Penal Code § 33850 is Unconstitutional.*

Important to note: Appellant is not claiming that Cal. Penal Code §33850 et seq. is unconstitutional, only that the continued seizure is wrong. However, as the District Court properly notes, since Appellant has not yet attempted to comply with Cal. Penal Code §33850, there has been no state deprivation. [1-ER-11]. Appellant's Second Amendment rights are still respected because he is not prohibited from purchasing other firearms, and because he has a post-deprivation remedy that he has not availed himself of.

Interestingly, this Court has already ruled Cal. Penal Code § 33850 does not violate the second amendment. In *Rodriguez v. City of San Jose*, a plaintiff's firearms were confiscated by a law enforcement agency, and the plaintiff alleged said seizure had violated her Second Amendment rights. *Rodriguez v. City of San Jose*, 930 F.3d 1123, 1127 (9th Cir. 2019). The plaintiff followed the procedures outlined in Cal. Penal Code § 33850 et seq. and obtained approval from the DOJ to regain possession of the firearms. *Id*. at 1129. However, law enforcement ***still refused*** to release the firearms to the plaintiff. *Id*.

Despite these facts, this Court held: (1) that the plaintiff's Second Amendment rights had not been violated by the initial seizure and continued retention of the firearms; and (2) that even though the plaintiff had completed the

42

procedural requirements of Cal. Penal Code §33850 et seq., the continued retention of the firearms did not violate the plaintiff's Second Amendment rights, because the plaintiff could still go out and purchase a firearm. *Id*. at 1133.

### 5. *U.S. History Regarding Regulations Of Firearms*

The United States has a history of enacting regulations that are intended to prevent potentially dangerous individuals from possessing firearms. For example, the Gun Control Act of 1968 was enacted "to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *United States v. Serrano*, 651 F.Supp.3d 1192, 1212 (S.D. Cal 2023) (citing *Barrett v. United States*, 423 U.S. 212, 218 (1976)).

On a similar note, in *United States v. Bartucci*, a federal statute prohibiting felony indictees from receiving firearms was deemed consistent with the United States' history of firearm regulations; the United States has had a history of disarming groups of people perceived as dangerous or disfavored. *United States v. Bartucci*, 658 F.Supp.3d 794, 803 (E.D. Cal. 2023).

In the same vein, the United States Supreme Court ruled in *Hudson v. Palmer* that a negligent or intentional ***unauthorized*** deprivation of property does not constitute a violation of the procedural requirements of the Due Process Clause if a meaningful post-deprivation remedy is available. *Hudson v. Palmer*, 468 U.S. 517 (1984). (Emphasis added).

43

In the above cases, continued deprivation of property was deemed constitutional, even though the plaintiff in *Rodriguez* had availed herself of Cal. Penal Code §33850 et seq., and even though the deprivation of property in *Hudson* was unauthorized. In the instant case, Appellant refuses to avail himself of Cal. Penal Code § 33850 et seq., which is an *authorized* California statute that is designed to protect the public from potentially dangerous individuals possessing firearms.

For the foregoing reasons, the continued retention of the firearms does not violate Appellant's Second Amendment rights.

## III. THE DISTRICT COURT DID NOT ERR BY NOT ISSUING AN INJUNCTION.

Plaintiff is not entitled to injunctive relief. Plaintiff acknowledges there was probable cause for the search warrant of Plaintiff residence [3-ER-454, 455]. Plaintiff admits probable cause to seize firearms at his residence pursuant to said search warrant. Plaintiff admits he has not complied with the statutory provision of the Cal. Penal Code for the release of his firearms. The District Court previously denied Appellant's request for injunctive relief for the return of his firearms because Appellant had not complied with Cal. Penal Code §§ 33850- 895. [1-ER-14-19]. Therefore, Appellant is not entitled to injunctive relief and the District Court did not abuse its discretion.

44

## IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY REFUSING TO CONSIDER PLAINTIFF'S RULE 11 MOTION

Finally, Appellant argues that the lower court abused its discretion when it refused to consider if Appellees' counsel should be sanctioned under Rule 11. Procedurally, Appellees' counsel filed a Rule 11 motion, indicating that Appellant's counsel should be sanctioned in regard to the filing of his Complaint. [2-ER-256-273]. In response, Appellant requested that the lower court impose sanctions against Appellees. [2-ER-189-193].

In the District Court's Order granting Appellees' Motion For Summary Judgment, the court indicated that Appellees had not met their burden to prove that sanctions were warranted under Rule 11. [1-ER-12]. Nothing further was said regarding either party's Rule 11 motions. *Id.*

Under Federal Rule of Civil Procedure 11(c)(6), an order *imposing* a sanction must describe the sanctioned conduct and explain the basis for the sanction. Since district courts are best acquainted with their local bar's litigation practices, they are best situated to determine when a sanction is warranted, in order to serve Rule 11's goal of deterrence. See *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 404 (1990).

A district court is also not strictly obligated to provide its reasoning for denying a Rule 11 motion for sanctions. In *Winterrowd v. American General*

*Annuity Ins. Co.,* this Court ruled that a district court does not necessarily abuse its discretion by simply denying a request for sanctions without making specific findings of fact. *Winterrowd v. American General Annuity Ins. Co.*, 556 F.3d 815, 826 (9th Cir. 2009).

However, in *Cervantes Orchards & Vineyards, LLC v. Deere & Co.*, counsel for defendants were sanctioned by a district court, but the district court failed to adequately explain its reasons for awarding sanctions. *Cervantes Orchards & Vineyards, LLC v. Deere & Co.*, 731 Fed.Appx. 570, 573-574 (9th Cir. 2017). Accordingly, this Court remanded the case for further explanation regarding the basis, amount, and reasonableness of the fees. *Id*. at 574.

In this case, the District Court was within its discretion to deny a Rule 11 motion without providing explanation as to why sanctions would not be implemented. Case law suggests that such explanations need only be written when sanctions are being imposed, not denied. As such, a denial to impose sanctions should not necessarily correlate with an abuse of discretion. Thus, the district court did not abuse its discretion by denying Appellees' Rule 11 motion and refusing to consider Appellant's Rule 11 motion.

## CONCLUSION

Based upon the foregoing, Respondents respectfully request that this Court deny each of the Appellant's claims and affirm the ruling of the District Court for

the Central District of California.

Dated: March 21, 2024            **CITY ATTORNEY'S OFFICE – CITY OF RIVERSIDE**

                                       By: */s/ Cecilia Rojas*
                                            Cecilia Rojas,
                                            Deputy City Attorney

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)(7)(B) AND

## CIRCUIT RULE 32-1

I, Cecilia Rojas, hereby certify that the foregoing APPELLEE'S

ANSWERING BRIEF is doubled spaced and utilizes a proportionately spaced 14-point Times New Roman typeface. This brief comprises of a total of 10,267 words, as calculated by the Microsoft Word word-processing system, how it was prepared.


Respectfully Submitted,

Dated: March 21, 2024                    **CITY ATTORNEY'S OFFICE –**
                                         **CITY OF RIVERSIDE**

                                         By: */s/ Cecilia Rojas*
                                             Cecilia Rojas,
                                             Deputy City Attorney

## CERTIFICATE OF SERVICE

I, Cecilia Rojas, hereby certify that on March 21, 2024, I caused to be filed the foregoing APPELLEE'S ANSWERING BRIEF electronically transmitted with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Respectfully Submitted,

Dated: March 21, 2024

**CITY ATTORNEY'S OFFICE – CITY OF RIVERSIDE**

By: */s/ Cecilia Rojas*
　　Cecilia Rojas,
　　Deputy City Attorney